0’Nlii!LL, C. J.
 

 The -Pacific Mutual' Life Insurance Company' issued a policy for $2,000.00 on the life of -Ferdinand H. Bernier on the -25th of January, 1929; his wife being the beneficiary. He was killed by the falling of an airplane in which he. was riding, .on the 5th of April, 1930. The policy contained the following stipulation: “It is hereby understood and agreed, ip the event of the death of the insured arising, in whole or in part, directly or indirectly, from engaging in aerial navigation, except while riding as a fare-paying passenger in a licensed commercial air craft provided by an incorporated common carrier for passenger service, and while such air craft is operated by a licensed transport pilot and is flying in a regular civil. airway between definitely established air ports, the only liability under this policy shall be for a sum equal to the premiums paid thereon, and the policy shall, thereupon be terminated.”
 

 The airplane in which the insured met hisdeáth was not a licensed commercial aircraft ; it was not provided by an incorporated common carrier for passenger service, was not Operated by a licensed transport pilot, and was not flying in a civil airway between definitely established airports.
 

 " The insurance company therefore refused to pay the widow the $2,000 but offered her $94', being the amount of the premiums that had-been paid' on the policy. She sued for the $2,000, basing her claim upon the fact' that the deáth of her husband occurred after' -the policy had become incontestable by the following clause in the policy," viz.: “This Policy and the application therefor constitute the-entire contract between 'the parties, and'the-contract shall be inc oh testable after it shall have been -in force, during the lifetime of the Insured, for one year-from the date of the Policy, except for non-payment of premium or for violation of the conditions of the Policy relating to military or naval service in time of war.”-
 

 
 *1081
 
 • The civil district court gave judgment for the plaintiff, and it was affirmed by the court of appeal.
 

 ■The -insurance company cites and relies upon the case of Metropolitan Life Insurance Co. v. Conway, Superintendent of Insurance, 252 N. Y. 449, 169 N. E. 642, where the Court of Appeals of New York was called upon to construe, with reference to a proposed air craft clause, a statute (Insurance Law, § 101, subd. 2 [Consol.' Laws, c. 28]) making life insurance policies embody the provision-that it “shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from -its date of issue except for non-payment of premiums and except for violation of the conditions of the policy relating to military or naval service in time of war.” Because of the statute, the superintendent of insurance refused to approve the rider, submitted by the Metropolitan Life Insurance Company, to be attached to its policies, in the following form: “Death as a result of service, travel or flight in any species of air craft, except as a fare-paying- passenger, is a risk not assumed under this policy; but, if the insured shall die as a result, directly or indirectly, of such service, travel or flight, the company will pay to the beneficiary the reserve on this policy.” The.court ruled that the proposed rider would not.be violative of the statute. The reason for the decision, stated substantially, was that the statutory provision, making life insurance policies incontestable after having been in force during the lifetime of the insured for a period of two years, was not a mandate as to the extent of the coverage which the insurance companies were obliged to include, or the extent of the risk which they were obliged to assume, in their insurance contracts. ■ “It means only this,” said Chief Justice Cardozo, for the .court, “that within the limits of the coverage the policy shall staiid, unaffected by any defense that it was invalid in its inception, or thereafter became invalid ,by reason of a condition broken.”
 

 We regard the decision cited, therefore, as authority for the proposition merely that a life insurance company may, without doing violence to a provision making the policy incontestable after a stated-period, except from the- so-called
 
 coverage,
 
 or risk assumed, any cause of death that the company sees fit to except, provided, of course, that the
 
 exception
 
 shall be expressed so plainly in the policy as to- leave no reasonable doubt that the
 
 exception
 
 is to remain after the policy shall have become otherwise
 
 incontestable.
 
 No better' illustration of such an
 
 exception
 
 could be given than the exception “for violation of the conditions of the policy relating to military or naval service in time of war.” Other exceptions that were made in years gone by, and approved by the courts, were death by suicide, if plainly stipulated; death - resulting from a violation of law by the insured; death while engaged in a specified hazardous occu-pation or undertaking; death occurring while the insured is beyond certain prescribed limits of residence or travel; or death resulting from a quarrel or duel. All of these exceptions from the risk assumed are, like the exception of death from engaging in military or naval service, or death from engaging in aerial navigation, exceptions relating to -a hazardous occupation, undertaking, or situation, of the insured at the time of his death.
 

 By the terms of the policy on which this suit is founded, the insurance company would have been bound to pay to the beneficiary the amount stated on the face of the policy if the death of the insured,’ arising “from engaging in .aerial navigation,” had occurred before the policy became incontestable;- except that, on proof of death by that
 
 *1083
 
 means, the company would have been free from liability (except for a return of the premiums paid) if the insured was not a fare-paying passenger at the time he was killed, or if the air craft was not provided by an incorporated common carrier, or was not used for passenger service, or not operated by a licensed transport pilot, or not flying in a regular civil airway, or between definitely established air ports, on the fatal occasion. ■But after the policy had been in force for a year, the premiums having been paid, the obligation to pay the amount stated on the face of the policy on due proof of the death of the insured was incontestable, except for violation of the conditions relating to military or naval service in time of war. These conditions were not warranties or mere conditions the violation of which would render the policy void. The conditions relating to military .or naval service in- time of war,' stated substantially, were that if within five years from the daté of the policy the insured should engage in military or- naval service in time of war the liability of the company, in the event of the death of the insured while so engaged, or as • a result ■ thereof within ■ six months thereafter but within the period of the war, would be limited to any outstanding dividend additions, etc. These conditions, relating to military or naval service in time of war, constituted a limitation of the so-called coverage or risk assumed, as plainly as did the conditions on which alone the insured could engage in aerial navigation, without affecting the obligation .of the insurer, constitute a limitation of the coverage or risk assumed by the insurer; and yet it was deemed necessary to except the conditions relating to military or naval service in time of war from the provision making the policy incontestable after one year, in order that the obligation of the insurer to pay the amount stated on the face of the policy might remain contestable after the expiration of the year, on the ground of violation of the conditions relating to military or naval service in time of war. Our opinion therefore is that, inasmuch as only the one exception was made in the provision making the policy incontestable after having been in force for a year, the intention, at least of the insured, was that there should be no other exception. If the insurance company intended to except also, from the incontestability clause, a violation of the conditions relating to aerial navigation, that exception, like the exception of violation of the conditions relating to military or naval service in time of war, should have been expressed. Article 1958 of the Civil Code declares that, if any doubt or ambiguity in a contract has arisen from the want of some necessary explanation which one of the parties to the contract ought to have given, the construction favorable to the other party shall prevail. The rule is universally recognized, particularly with regard to insurance policies, that any ambiguity in a contract made on a form prepared by one of the parties to the contract ought to be construed against him.
 

 Our conclusion therefore is that the civil district court and the Court of Appeal were right in maintaining that the policy on which this suit is founded, having been in force over a year during the lifetime of the insured, was not contestable on the ground of violation of the conditions relating to aerial navigation.
 

 We could not decide otherwise without going against, the ruling in Northwestern Mutual Life Insurance Co. v. Johnson (National Life Insurance Co. v. Miller), 254 U. S. 96, 41 S. Ct. 47, 48, 65 L. Ed. 155. The policy issued by the Northwestern Mutual Life Insurance Company on the life of Johnson, payable to his wife, contained the provision that if within two years from its date the in-, sured should, while sane or insane, die by
 
 *1085
 
 his own hand, the policy should be void. Johnson committed suicide after two years from the date of the poliey, and there was no evidence that he was insane. The circuit court of appeals certified two questions with regard to that poliey, viz.: First, whether, there being no provision expressly covering suicide after two years from the date of the poliey, the provision excepting suicide within the two years impliedly covered suicide committed after the two years; and, second, whether the contract, if construed to cover suicide committed by the insured while sane after the lapse of two years, was against public policy. The other policy, issued by the National Life Insurance Company, and payable to Johnson’s executors or administrators, had no suicide clause, but contained a provision making it incontestable after one year from its date. Johnson’s suicide occurred more than a year after the date of that policy. The questions propounded, with regard to that policy, were, first, whether the
 
 incontestability
 
 clause prevented the company from denying liability on the ground of suicide, and, second, whether the contract, in so far as it made no exception of death by suicide while sane, was against public policy, and therefore void. The Supreme Court said that the question of public policy with regard to such contracts was a matter for the states to decide; that the evidence did not disclose in what state either of the contracts was made; but that it was not necessary to postpone the court’s answer to the questions on that account. The court said that the point decided in Ritter v. Mutual Life Insurance Co., 169 U. S. 139, 154, 18 S. Ct. 300, 42 L. Ed. 693, 698, as explained in Whitfield v. Ætna Life Insurance Co., 205 U. S. 489, 495, 27 S. Ct. 578, 51 L. Ed. 895, 898, was that, when the contract was silent as to whether it covered suicide committed by the insured while sane, there was an implied exception of such a death. And then, Mr. Justice Holmes, for the court, said, referring to the two-year clause in the first-mentioned policy and the one-year clause in the second:
 

 “When a clause makes a policy indisputable after one or two years, the mere evocation of a possible motive for self-slaughter is at least not more objectionable than the creation of a possible motive for murder. The object of the clause is plain and laudable — to create an absolute assurance of the benefit, as free as may be from any dispute of fact except the fact of death, and as soon as it reasonably can be done. * * *
 

 “We are of opinion that the provision in the first mentioned document avoiding the policy if the insured should die by his own hand within two years from the date is an inverted expression of the same general intent as that of the clause in the second making the policy incontestable after one year, and that both equally mean that suicide of the insured, insane or sane, after the specified time shall not be a defense. It seems to us that that would be the natural interpretation of the words by the people to whom they are addressed, and that the language of each policy makes the company issuing it liable in the event that happened. We answer the first question in each certificate, yes. The other questions are disposed of by our answer to the first.”
 

 A denial of liability for the amount stated on the face of a life insurance policy, on the ground of suicide, is a denial of coverage, a denial that the company insured against the risk of death by that means; but that defense is barred by the provision making the contract incontestable after a stated period, unless that defense is plainly excepted from the provision making the policy incontestable after the period stated. The provision in a life insurance policy, making the
 
 *1087
 
 contract incontestable after a stated period, means something- more than that the insurer cannot then contest the validity of the policy on the ground of breach of a condition; it means that the company cannot then contest its obligation to pay. on d,ue proof of the death of the insured, the amount stated on the face of the policy, except for a cause of defense that is plainly excepted from the provision making the policy incontestable.
 

 The decisions that were cited in Metropolitan Life Insurance Co. v. Conway, Superintendent, are not at all appropriate to the case before us. They are Sanders v. Jefferson Standard Life Insurance Co. (C. C. A.) 10 F.(2d) 143; Flannagan v. Provident Life & Accident Insurance Co. (C. C. A.) 22 F.(2d) 136; Wright v. Philadelphia Life Insurance Co. (D. C.) 25 F.(2d) 514, 515; Scarborough v. American National Insurance Co., 171 N. C. 353, 88 S. E. 482, L. R. A. 1918A, 896, Ann. Cas. 1917D, 1181; Myers v. Liberty Life Insurance Co., 124 Kan. 191, 257 P. 933, 55 A. L. R. 542; Childress v. Fraternal Union of America, 113 Tenn. 252, 82 S. W. 832, 3 Ann. Cas. 236; Brady v. Prudential Insurance Co., 168 Pa. 645, 32 A. 102; Illinois Bankers’ Life Ass’n v. Byassee, 169 Ark. 230, 275 S. W. 519, 41 A. L. R. 379; Woodbery v. New York Life Insurance Co., 129 Misc. Rep. 365, 221 N. Y. S. 357; Id., 223 App. Div. 272, 227 N. Y. S. 699; Hearin v. Standard Life Insurance Co. (D. C.) 8 F.(2d) 202; Mack v. Connecticut General Life Insurance Co. (C. C. A.) 12 F.(2d) 416, 419; and Draper v. Oswego County Fire Relief Ass’n, 190 N. Y. 12, 18, 82 N. E. 755. The ease of-Sanders v. Jefferson Standard Life Insurance Co. was a suit for double indemnity, under a life insurance policy for $20,000, providing for double indemnity in case of death from bodily injury, ‘‘except - * * * from bodily injury inflicted by another person,” etc. The insured died from a gunshot wound inflicted intentionally by another person. The company paid the $20,000, and the beneficiary sued for another $20,000, claiming that the incontestability clause was applicable to the double or additional indemnity; which, of course, it was not, because that part of the insurance was not life insurance, but accident insurance. The court very- properly held that the incontestability clause was applicable only to the amount stated on the face of the policy. Flannagan v. Provident Life & Accident Insurance Co. was a suit on two accident policies ; the defense being that the fatal accident was caused by the insured’s driving an automobile while he was intoxicated, and therefore in violation of law. The policies expressly declared that they did not cover accidents occurring while the insured was under the influence of intoxicants, or violating a law. The plaintiff invoked-a statute of Virginia (Acts 1918, p. 539, c. 361) making life insurance policies incontestable after one year; hut the statute, of course, was not applicable to accident insurance. In Wright v. Philadelphia Life Insurance Co., the clause which made the policy incontestable after two years from its date contained also the declaration:' “Self-destruction while sane or insane, within two years of the date hereof, is a risk not assumed by the -Company under this policy.” The insured committed suicide within the two years. The language of the policy left no possible doubt that the company was not liable. In Scarborough v. American National Insurance Co. the insured had suffered the penalty of death for the crime of murder. The ruling was that it would be against public policy and good morals for a life insurance policy to cover the risk of death as a penalty for crime. Of course, a contract that is invalid because of its being violative oLpublic policy or good morals cannot be made valid
 
 *1089
 
 by the agreement of the parties that it shall be incontestable after a stated time. Scarborough’s Case was like Burt v. Union Central Life Insurance Co., 187 U. S. 362, 23 S. Ct. 139, 47 L. Ed. 216; Northwestern Mutual Life Insurance Co. v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57; and Collins v. Metropolitan Life Insurance Co., 27 Pa. Super. Ct. 353. The latter case was decided the other way by the Supreme Court of Illinois, 232 Ill. 37, 83 N. E. 542, 14 L. R. A. (N. S.) 356, 122 Am. St. Rep. 54, 13 Ann. Cas. 129, on the ground that the •Constitution forbade the corruption of blood or forfeiture of estate; the basis for the decision by the House of Lords in Amicable Society v. Bolland, 4 Bligh, N. R., 194, 5 Eng. Reprint, 70, 2 Dow & C. 1, 6 Eng. Reprint, 630. The Illinois court showed that an incontestability clause is of no importance in determining whether a contract is contra bonos mores. The next case cited in the Conway Case is Myers v. Liberty Life Insurance Co. There the policy expressly excluded suicide within two years, and was incontestable after one year, and the insured committed suicide within the one year. In Childress v. Fraternal Union, the constitution and by-laws of the fraternity provided that if a member holding a benefit certificate committed suicide the amount of the indemnity to be paid would be one-third of the amount to be paid if he died of natural causes; and the ruling of the Tennessee court was that the provision was plain enough to be not affected by the incontestability provision. Brady v. Prudential Insurance Co. is authority only for the proposition that the incontestability clause in a life insurance policy does not affect a clause limiting the right of action to six months from the death of the insured. That decision merely affirms that the incontestability clause leaves the company free to insist upon an enforcement of any plain and unambiguous stipulation made in favor of the company. Illinois Bankers’ Life Ass’n v. Byassee was a suit for disability insurance, not life insurance; and the ruling was that the incontestability clause, which had reference to the life insurance provided for in the policy, did not affect the clause requiring notice to be given the company within 90 days from the happening of total and permanent disability. In Woodbery v. New York Life Insurance Co., the policy provided that the company’s liability would be limited to the amount of the premiums paid if the insured committed suicide within two years, and that the policy would be incontestable after the two years; the insured committed suicide within the two years, and the beneficiary accepted the amount of the premiums, without protest, and surrendered the policy for cancellation. In Hearin v. Standard Life Insurance Co., the policy excluded the risk of suicide within one year, and was incontestable after the one year, and the insured committed suicide within the one year. The suit was brought after the year had gone by; but the provisions of the policy left no possible doubt that the company was not liable when the insured committed suicide within the year. Mack v. Connecticut General Life Insurance Co. was like Hearin’s Case, except that in Mack’s Case, the time limit was two years, in both the suicide clause and the incontestability clause. Mack died within the two years, under circumstances indicating that he had committed suicide. The policy was for $7,500, with a rider providing for double indemnity in case of death by accidental means. The company made a compromise settlement with the beneficiary by paying $4,-000 and obtaining a release. The beneficiary afterwards sued for $11,000, averring that the release was obtained by fraud. The court found that the evidence “did not sustain the allegations of fraud in procuring the release.”
 
 *1091
 
 That is all that the court decided. Draper v. Oswego County Eire Belief Association was a suit on a fire insurance policy, and merely furnishes an example of the distinction between a condition, the breach of which works a forfeiture of the policy, and an exception from the risk assumed.
 

 Counsel for the insurance company refer us to two decisions in which the Conway Case is cited with approval, viz.: Jolley v. Jefferson Standard Life Insurance Co., 199 N. C. 269, 154 S. E. 400, and Head v. New York Life Insurance Co. (C. C. A.) 43 F.(2d) 517, 518. In Jolley’s Case, the policy was for $2,500, with the following double indemnity clause, viz.: “The Company will pay the beneficiary * * * double the face amount of this policy if during the premium paying period, and before default in the payment of any premium, * * * and before any non-forfeiture provision is in effect, the death of the Insured results from bodily injury within ninety days after the occurrence of such injury, * * * except these provisions' do not apply if the Insured shall engage in military or naval service, * * *
 
 or in case death results from bodily injuries inflidted by another person
 
 or,by the Insured himself,” etc. (The italics are ours.) The insured was shot and killed by another person^ more than ten years after the date of the policy,. which was incontestable after one year. The company paid the $2,500, but refused to pay double indemnity. The suit was for the - additional $2,500. The language which we have quoted left no possible doubt that the incontestability clause was not applicable to the double or additional indemnity. Head v. New York Life Insurance Co. was also a suit on a policy providing for double indemnity in case of death by accident, but providing: “Double indemnity shall not be payable if the insured’s death resulted * * * from participation as a passenger or otherwise in aviation or aeronautics.” The insured was killed by the falling of an airplane in which he was riding. The company paid the face amount of the policy, $5,000, and the beneficiary sued for that additional sum, relying upon an incontestability statute (Comp. St. Okl. 1921,- § 6731), like the statute of New York. The language of the double indemnity clause left no possible doubt that the double indemnity did not apply to death resulting from participation in aviation or aeronautics.
 

 In a suit on a life insurance policy, the question whether the defense set up by the insurance company is barred by the incontestability clause in the policy does not depend upon whether the company pleads a breach of a condition or pleads that the cause of death was excepted from the risk insured against; but it depends upon whether all that is said in the policy leaves no reasonable doubt that the defense set up by the company is not barred by the incontestability clause. In the case before us, considering that the incontestability clause makes but one exception, of a cause or circumstance of death for which the policy should remain contestable after one year, the natural and plausible inference is that the policy became incontestable for any other cause or circumstance of death at the end of the year. Inclusio unius est exclusio alterius. Vice versa, the exclusion from the effect of the incontestability clause of only the one cause or circumstance of death, death while engaged in military or naval service or within six months thereafter but during the period of the war, was the inclusion of death “from engaging in aerial navigation” under any or all conditions.
 

 . The decision rendered in the present caso is said to be supported by Brady v. Fidelity
 
 *1093
 
 Mutual Life Association, 13 Orl. App. 35, where it was held that the incontestability clause in the policy forbade the insurance company to plead that the insured had violated the condition that he should not reside or travel south of the Tropic of Cancer. In that case, however, the death of the insured occurred long after his return north of the tropic, and was not even remotely caused by his violation of the condition of the policy.
 

 The defense urged by the insurance company in the present case is not any more a denial of coverage than it is a plea of breach of the conditions of the policy relating to aerial navigation. In that respect, our decision is in accord with the ruling made by the Court of Appeals of New York in Metropolitan Life Insurance Co. v. Conway, Superintendent.
 

 The judgment is affirmed.
 

 OVERTON, J., dissents, and indicates reasons.
 

 ,ODOM, J., dissents.