## ROSSMAN v. METROPOLITAN LIFE INS. CO.

Civil Action No. 415.

District Court, D. Maine, S. D. (Southern Division.)

May 2, 1947.

Judgment in favor of plaintiff for the reserve value of the policy in the sum of $58.96.

Albert Knudsen, of Portland, Me., for plaintiff.

Brooks Whitehouse, of Portland, Me., for defendant.

CLIFFORD, District Judge.

This is an action brought by plaintiff, as beneficiary of a life insurance policy issued by defendant to Glenn O. Rossman, to recover the face value of $10,000 and interest. The action was initiated in the Superior Court of Cumberland County, State of Maine, and was removed to this Court by defendant corporation, being a corporation organized under the laws of the State of New York, and having its principal place of business in New York City, New York. The case was submitted to this Court, by agreement of counsel, to be decided on the basis of briefs and exhibits. There being no issue as to facts, the two questions to be answered are: First, was the drowning of insured the direct or indirect result of flight in his private aircraft?; and, second, if insured's death was such a result, does the policy's "Incontestability Clause" prevent the defendant from relying on the policy's "aircraft rider" as a defense?

The facts were agreed upon by the parties as follows: The assured, Dr. Glenn O. Rossman, on May 18, 1945, was piloting his own plane, accompanied by a friend, Dr. Carman O. Pettapiece. Fog preventing a timely landing and having caused them to become lost, the plane ran out of gas and made a forced landing in the ocean some fifty or more yards off the shore of Allen's Island on the coast of Maine (Complainant's Exhibit 1, p. 6). Neither person was injured in the landing and both were able to come to the surface some distance away from the plane. The water was very cold and very rough, with waves running high and a strong tide also present (Complainant's Exhibit 1, p. 9). The rocks on the shore were visible from the point of the landing. Dr. Rossman, according to Pettapiece's uncontradicted testimony, contained in Complainant's Exhibit 1 (p. 9), was coughing and struggling to keep afloat, dogpaddle fashion. Pettapiece testified as to his experience as follows (p. 10):

"I was swallowing and inhaling some water, and I was conscious of being lifted and I knew I was on a wave, and I exerted whatever energy I had left to make the most of the wave, and it carried me closer to shore, and I was sucked back again, and I was carried in again on the surface of the wave, and I landed—I mean I felt rocks grating under my knees, and I was then sucked back in by the undertow, I should imagine; and the next thing I knew I was thrown on to the rocks, and I was wedged in between two sharply edged rocks * * * complete exhaustion kept me lying there— just lying there without moving—it seems a long time, but I should imagine fifteen or ten minutes."

At the end of this time insured was not to be seen and was admitted by both parties to have drowned.

Stapled to the top of the second page of insured's policy was a "Special Provision as to Aeronautics," dated November 17, 1937, and worded as follows:

"Death as a result, directly or indirectly, of travel or flight in any species of air craft, except as a fare-paying passenger on a licensed air craft piloted by a licensed passenger pilot on a scheduled passenger air service regularly offered between specified airports, is a risk not assumed under this Policy; but, if the Insured shall die as a result, directly or indirectly, of such travel or flight, the Company will pay to the beneficiary the reserve on this Policy, less any indebtedness thereon."

On the front page of the policy, directly over the clause reciting execution, is typed: "This policy is subject to the Special Provision as to Aeronautics included herein."

In the text on the second page is the following provision:

"3. Incontestability:—This Policy shall be incontestable after it has been in force during the lifetime of the Insured for a period of two years from its date of issue, except for non-payment of premiums, and except as to provisions and conditions relating to the benefits in the event of total and permanent disability, and those granting additional insurance specifically against death by accident, contained in any supplementary contract attached to, and made a part of, this Policy."

The policy was issued on February 8, 1937, and renewed on February 8, 1942.

A "Supplement to Application for Reinstatement Insurance in Metropolitan Life Insurance Company to be completed by applicants who have ever flown other than as fare-paying passenger" was stapled to the top of the third page, signed by Dr. Rossman, and dated September 15, 1937. In it Dr. Rossman stated that he had flown about 100 hours both as a fare-paying passenger and for pleasure in his own or other private plane; that he was a pilot, possessing a Federal license, private grade, authorizing him to fly any type of plane; that he expected to fly at least 10 hours a year to retain his license; that he was then a practicing physician.

Defendant's answer alleges a tender to plaintiff of the sum of $58.96, the reserve value of the policy, and a refusal on the part of plaintiff to accept. We have nowhere been led to question the fact that this sum is the true amount of the reserve and shall assume there is no contest on this point.

■ Application for the policy, delivery of the policy, and payment of the first premium occurred in Michigan. We assume, with counsel, that Michigan law governs the construction of the contract in question, but, in the absence of any suggestion to the contrary, assume such law to be in accord with rules and principles generally used in interpreting this kind of contract.

■ We come first to the issue of causation. Was insured's death the direct or indirect result of flight in his aircraft? Plaintiff contends that had insured been a good swimmer he would be alive today. She urges us to give weight to the fact that Dr. Pettapiece was able to swim to shore. Finally, we are told that the present case is distinguishable on its facts from Green v. Mutual Benefit Life Insurance Co., 1 Cir., 1944, 144 F.2d 55. We are unable to reach this conclusion.

Granted that the facts of no two cases are identical, it nevertheless seems to us that the facts of the Green case are remarkably similar to those before us. We can now, after considerable scrutiny of the Green case, well appreciate why able counsel for plaintiff chose not to detail any reasons for his statement that the Green case was "distinguishable on the facts." In the Green case an aviator evidently made a safe emergency landing in the open sea but met his death through drowning caused by the failure of his rubber raft to inflate. The waters in which he landed were icy, visibility was zero, and a driving snowstorm was raging. The aviator's insurance policy contained an aviation rider excepting from coverage "death occurring by reason of any aerial flight." The Court decided that this clause applied to the circumstances of the insured's death and that there was no debatable issue of proximate cause, Judge Magruder saying (page 58):

"The mere fact that proper protective or rescue measures might have succeeded in surmounting the risk does not obscure the conclusion that what did happen was death by the operation of a risk ordinarily associated with aerial flight."

The same language applies to the instant case. Conditions were analogous, there being very cold, very rough water, with tide running strong, low visibility and a rocky shore (Complainant's Exhibit 1, pp. 9, 10). It by no means appears from Dr. Pettapiece's testimony that he reached shore any more through his own efforts than through a fortuitous combination of waves, undertow and Providence. Though he was admittedly a good swimmer, he himself felt the issue was very much in doubt until, exhausted, he was literally thrown and wedged into a crevice on the shore. This eventuality seems to us to be well within the scope of risks sought by the insurance company to be excluded. To cut the chain of causation at the point of landing the aircraft on the water would be unreasonably to limit the purview of the phrase "indirect result", in a world where the variety of fatalities stemming from flight is only too well known.

We think our reasoning on this point is supported by two cases cited in the Green opinion, both involving non-injurious landings by aircraft at sea followed by the drowning of the insured, Wendorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S.W.2d 99, 57 A.L.R. 615, and Neel et al. v. Mutual Life Insurance Co. of New York, 2 Cir., 1942, 131 F.2d 159. It is true that in these cases the wording of the aviation rider was different from that in the case before us, but the causation issue was squarely presented in both, the beneficiary being denied recovery. We quote Judge Augustus Hand's language in the Neel case (page 160):

" * * * It seems quite contrary to the natural meaning of the proviso to say that (the insured) did not meet his death from 'participation in aeronautics' merely because he may not have been killed by impact upon the water. If he landed in the open sea, even though without immediate injury, drowning was an almost inevitable conse-

quence. To say that his death did not result 'from participation in aeronautics' would exclude from the proviso of the policy the most ordinary risks involved and limit the effect of the clause in an unexpected and unreasonable way."

One could perhaps question the proposition that death in the present case was "an almost inevitable consequence." Death was, in any event, well within the realm of probability and, to our mind, approximately as closely related in a causal sense to the aircraft flight as the death in the Green case.

■ We are therefore forced to answer the second question in this case: Should the defendant, in view of the incontestability clause, be allowed to assert the exclusionary effect of the aircraft rider in defense to this action? Plaintiff's arguments are three in number: (1) The authority and reasoning of Bernier v. Pacific Mutual Life Insurance Co., 173 La. 1078, 139 So. 629, 88 A.L.R. 765, should govern; (2) the cases relied upon by defendant present different issues; and (3) the position taken by defendant is contrary to a layman's understanding of the policy.

In the Bernier case, the aviation rider was worded in part as follows:

"It is hereby understood and agreed, in the event of the death of the insured arising, in whole or in part, directly or indirectly, from engaging in aerial navigation * * * the only liability under this policy shall be for a sum equal to the premiums paid * * *."

The policy also contained an incontestability clause providing that after the lapse of one year from the date of the policy, it should be incontestable "except for nonpayment of premium or for violation of the conditions of the Policy relating to military or naval service in time of war."

The court affirmed judgment for the beneficiary on the ground that any exclusion of aviation risks should have been incorporated into the incontestability clause and that, since this was not done, "The intention, at least of the insured, was that there should be no other exception." The court was aided in applying the maxim of inclu-

sio unius est exclusio alterius by the fact that it felt an ambiguity existed which should be resolved against the party responsible for the form of the contract.

We do not deem it necessary at this time to choose between the line of cases headed by The Metropolitan Life Insurance Co.. v. Conway, 252 N. Y. 449, 169 N.E.· 642, and that allegedly headed by the Bernier case, for the reason that the facts before us do not fall within the coverage of the Bernier case. The words in the policy here at issue are "Death * * * is a risk not assumed," substantially identical with those in the Conway policy. The Bernier policy states " * * * in the event of the death of the insured * * * the only liability * * * shall be for a sum equal to the premiums paid." The Court in the Bernier case saw fit to draw a distinction between these clauses and reconciled its position with that taken by the court in the Conway case, saying (173 La. 1078, 1082, 139 So. 629, 630, 88 A.L.R. 765):

"We regard the (Conway case), therefore, as authority for the proposition merely that a life insurance company may, without doing violence to a provision making the policy incontestable after a stated period, except from the so-called *coverage*, or risk assumed, any cause of death that the company sees fit to except, provided, of course, that the *exception* shall be expressed so plainly in the policy as to leave no reasonable doubt that the *exception* is to remain after the policy shall have become otherwise *incontestable*." (Italics from original.)

If the Bernier court conceded that the Conway policy met this test, as we think it did, then we have no choice but to say that the policy before us also satisfies the requirement.

Moreover, as will appear later in this opinion, we cannot feel that the insured in this case, in view of the spotlight thrown on his activities as a pilot and his understanding as a professional man, labored under any misapprehension as to the coverage afforded by this policy.

Plaintiff has energetically contended that the following cases cited by defendant do not raise the issue before us. Metropolitan

*Life* Insurance Co. v. Conway, 252 N. Y. 449, 169 N.E. 642; Pacific Mutual Life Insurance Co. of California v. Fishback, 171 Wash. 244, 17 P.2d 841; Hearin v. Standard Life Insurance Co. D.C.E.D., Ark., 8 F.2d 202; Head v. New York Life Insurance Co., 10 Cir., 43 F.2d 517. It is entirely appropriate to show that the precise issues in these cases differ from that in the case at bar. Nevertheless, we are of the opinion that the result of plaintiff's efforts is to call our attention to distinctions without fundamental difference.

Granted that the issue in the Conway case was whether an insurance company should be allowed to equip its policies with an aviation rider in view of the statutory incontestability clause, we feel Chief Judge Cardozo's language (169 N.E. 642) is directly applicable to this case:

"The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken."

If the aviation rider in that case was not inconsistent with the statutory clause, for the purpose of approving the policy, we do not see how it suddenly becomes "utterly ambiguous and inconsistent," for the purpose of construing the meaning of the contract. After close analysis we feel also that the reasonable range of the authority of the other cases above cited includes the issue in this case. We therefore are of the opinion that defendant, in· invoking the aviation rider, is insisting upon the policy rather than contesting it.

To quote the words of Leahy, J. in Wilmington Trust Co. v. Mutual Life Ins. Co. of New York, D.C. Del., 68 F.Supp. 83, 86, in referring to the above line of cases:

"The doctrine of these cases is that the legislative policy behind incontestability clauses is to eliminate the right to question the validity of the policy after the lapse of time, except in the specific situations ex-

cepted in the statutes pertaining to incontestability. It is a non-sequitur to say that because validity after the passage of time can only be questioned within certain statutory exceptions that the insurance company must and can not, in the first instance, contract relative to its limit of coverage."

Perhaps the best explanation of the functions served by the "aviation rider" and "incontestability clause" is afforded by Williston (Rev.Ed. 1936, Vol. 3, p. 2280):

"In determining whether the incontestable clause is applicable to a given situation a distinction should be noted between matters of defense going to the invalidity of the whole policy on the one hand, and on the other hand provisions relating to excepted risks. The incontestable clause is intended not to enlarge the scope of the insurer's promise so as to include liability either by express terms of the policy or by implication of law, but to make certain the enforceability of the promise as set out in the policy. * * * The contrary decisions which regard the two provisions as conflicting, and which, on the principle of interpreting against the insurer, hold that the incontestable clause prevails over the other, fail to observe this distinction. The same reasoning is applicable to a provision excluding from the risk assumed by the insurer, death caused by engaging in aviation. * * *"

In view of the terse dismissal of the incontestability issue as having "no bearing" in Green v. Mutual Benefit Life Insurance Co., 1 Cir., 144 F.2d 55, 57, the above discussion may not have been strictly necessary. We felt, however, that the earnestness with which we were pressed with alleged distinctions warranted a more detailed analysis.

■ Even if we did not feel constrained by such authority, we should not alter the decision in this case. Plaintiff argues (Plaintiff's Brief, p. 7) that:

" * * * in these days of keen competition between insurance companies they should be held to a high degree of care in preparing contracts so that no insured could be misled to believe by ambiguous or inconsistent provisions that one insurance company excluded less from coverage than others."

We strongly subscribe to this statement but feel it has no application to the present policy. This is a Michigan policy, which had to meet the requirements of 3 Comp. Laws 1929, Sec. 12440, Stat.Ann.Sec. 24.-276 that:

"No such policy shall be so issued or delivered * * * (6) unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply * * *."

See Kirkby v. Federal Life Ins. Co., 6 Cir., 35 F.2d 126, and Ewins v. Washington National Insurance Co., 295 Mich. 602, 295 N.W. 329.

Not only is the aviation rider printed in type at least as large as that used for both the benefit and incontestability clauses, but it is double spaced, where the others are single spaced, and notice of its existence is further assured by its being the sole piece of paper stapled to the second page of the policy. Indeed, it is far more obvious than the "incontestability clause". The "Special Provision as to Aeronautics" is also referred to in the sole line of typewriting on the entire front page. When these facts are considered together with the exhaustive list of questions and answers appended to page 3 of the policy concerning the insured's past experience and future plans as an aircraft pilot, it is inconceivable to us that a professional man such as the insured could for a moment have been misled by the policy.

We see no opportunity to invoke the rule of construction pertaining to ambiguous contracts.

Judgment may, therefore, go for the plaintiff in the sum of $58.96, the reserve value of the policy.