57 N.J. Super. 269 (1959)
154 A.2d 645
MORRIS TULIPANO, PLAINTIFF-APPELLANT,
v.
THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1959.
Decided October 7, 1959.
*271 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Samuel L. Marciano argued the cause for appellant (Messrs. Florio, Dunn, Marciano & Lypinski, attorneys).
Mr. George D. McLaughlin argued the cause for respondent (Mr. Nicholas Scalera, of counsel and on the brief).
*272 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff, the named beneficiary under a group life insurance policy on the life of Frank Van Zevenhuyzen, sued defendant insurance company to recover the proceeds. The county district court dismissed the complaint in view of the provisions of N.J.S.A. 17:34-31(A)(4) which prohibits an employer from being named beneficiary. Plaintiff appeals.
The Trustees of Local Joint Executive Board of Hudson County Welfare Funds applied to defendant for a policy insuring the lives of employee-union members in the amount of $750 each. The policy was issued March 1, 1951, effective as of January 15 preceding, to the "Trustees of the Local Joint Executive Board of Hudson County Welfare Fund," known as the "assured." It covered all full-time employees of the contributing employers. However, coverage would not extend to an employee who was not a member in good standing of the Hotel & Restaurant Employees and Bartenders International Union, Locals 1 or 4. Further, coverage of an employee was to terminate automatically 31 days after termination of employment. Cessation of active work was to be deemed termination of employment, except that while an employee was "absent on account of sickness or injury, employment shall be deemed to continue until premium payments for such employee's insurance are discontinued."
A "contributing employer," as defined in the policy, was an employer of union members who was making payments into a trust fund administered by the assured (the Trustees) for the purpose of providing the life insurance for the employee-union members pursuant to a collective bargaining agreement between the union and that employer. Plaintiff was one of the contributing employers under the policy. The policy also provided that the employees were to contribute no monies toward the cost of the life insurance. The Trustees were to act "for and on behalf of the employers in all matters pertaining to the policy."
*273 The deceased, Frank Van Zevenhuyzen, was employed by plaintiff sometime prior to October 1952. He died May 23, 1953. He was an employee-union member covered under the policy up to October or November 1952. On the date of his death plaintiff was the designated beneficiary of the decedent.
Defendant refused to pay plaintiff the $750 under its policy, contending that (1) the policy was issued pursuant to N.J.S.A. 17:34-31(A)(4), which prohibits the plaintiff, as decedent's employer, from receiving the proceeds as a beneficiary; and (2) the policy coverage had terminated prior to Van Zevenhuyzen's death by reason of his termination of employment, and also because decedent, at the time of his death and for sometime prior thereto, had failed to pay his union dues, and therefore ceased to be a union member in good standing, as required by the contract of insurance.
We are informed that when the matter came up for trial the defenses were discussed with the trial judge. It was agreed that the first of the two defenses just mentioned would be decided as a matter of law, since it might be dispositive of the entire case. The trial judge then ordered each of the parties to submit a statement of facts sufficient to decide whether or not plaintiff was within a class of persons precluded from recovering as beneficiary on the group policy in question. The trial judge, in a letter opinion, found that plaintiff could not be named as beneficiary under the policy, since this was specifically prohibited under N.J.S.A. 17:34-31(A)(4). He also held that the incontestability clause of the policy "cannot breathe life into a contract which is obviously unenforceable because violative of statutory mandate." Accordingly, he entered final judgment dismissing the complaint.
At the time the policy was issued N.J.S.A. 17:34-31 provided that
"(A) No policy of group life insurance shall be delivered in this State unless it conforms to 1 of the following descriptions:

* * * * * * * *
*274 (3) A policy issued to a labor union, which shall be deemed the policyholder, to insure members of such union for the benefit of persons other than the union or any of its officials, representatives or agents, subject to the following requirements:

* * * * * * * *
(4) A policy issued to the trustees of a fund established by 2 or more employers in the same industry or by 1 or more labor unions, or by 1 or more employers and 1 or more labor unions, which trustees shall be deemed the policyholder, to insure employees of the employers or members of the unions for the benefit of persons other than the employers or the unions, subject to the following requirements: * * *" (Italics ours)
Plaintiff concedes that N.J.S.A. 17:34-31 is applicable, but contends that the policy in question is controlled by subsection (A)(3) and not (A) (4). He makes the preliminary claim that "The submitted facts were not clear and concise for the court below to infer that this group policy was issued in accordance with R.S. 17:34-31(A)(4)." The record on appeal does not show that this issue was raised below, and it may not be raised on appeal. In any event, the trial court expressly found as a fact, and not as a mere inference, that subsection (A)(4) was applicable, and this on the basis of the very statement of facts submitted by the plaintiff at the request of the court, and the much shorter statement presented by defendant.
Considering the matter on the merits, the conclusion is inescapable that the policy was issued in conformity with subsection (A)(4). Subsection (A)(3) provides for a policy issued to a labor union. Paragraph (b) of that subsection requires that the premium be paid by the union (known as the policyholder) "either wholly from the union's funds or partly from such funds and partly from funds contributed by the insured members specifically for their insurance." (A)(3) deals ostensibly with a situation where the union, without mention of or regard to any specific collective bargaining agreement or employer, procures the insurance directly from the insuring company. Such is not the case here.
*275 In his statement of facts to the trial court, plaintiff stated he (with other tavern owners) contributed $26 quarterly to the welfare fund for each union member he employed, and that part of this contribution was used by the welfare fund to pay the insurance premiums. Under the policy, as noted, the employees made no contribution toward the cost of the insurance. Thus, the premiums were paid, not from union funds or employees' contributions, but by the welfare fund from contributions by employers. Furthermore, the policy was not issued to a labor union, but to the trustees of the welfare fund established as a result of a collective bargaining agreement between the union and the tavern owner-employers, and plaintiff specifically so represented in his statement of facts supplied to the trial court. That this was the case is also borne out by the terms of the policy itself.
While these features are completely at odds with the type of insurance policy envisioned by subsection (A)(3), they do comport with the terms of subsection (A) (4), quoted above. Paragraph (b) of (A) (4) requires that the premium for this type of policy be paid by the Trustees "wholly from funds contributed by the employer or employers of the insured persons, or by the union or unions, or by both." Plaintiff, through the Hoboken tavern owners, had entered into a collective bargaining agreement with the Hotel & Restaurant Employees and Bartenders International Union, Locals 1 and 4. The agreement provided that a welfare fund was to be created. This fund was for the purpose of providing insurance benefits for employees pursuant to the agreement. The employers were to contribute the entire cost of the life insurance. The factual situation presented is exactly that defined by N.J.S.A. 17:34-31(A)(4). The trial court was therefore entirely correct in concluding that the policy in question had been issued in accordance with subsection (A)(4) and that the restrictions embodied in that statutory provision control the policy. Saffore v. Atlantic Casualty Ins. Co., 21 N.J. 300 (1956).
*276 Plaintiff argues that N.J.S.A. 17:34-31(A)(4), even if applicable, does not entitle defendant to refuse payment. He points to that section of the policy entitled "The Contract," where the following appears:
"This policy, the application of the Assured attached hereto, and the individual applications, if any, of the employees, constitute the entire contract between the parties hereto. * * *
The rights of the Assured or of any insured employee or of any beneficiary under this policy shall not be affected by any provision other than the one contained in this policy or in the copy of the Assured's application attached hereto or in the individual application of an insured employee."
N.J.S.A. 17:34-31(A)(4), as we have seen, expressly limits the class of eligible beneficiaries in stating that a group insurance policy shall be "for the benefit of persons other than the employers or the unions." And the opening sentence of N.J.S.A. 17:34-31 directs that "No policy of group life insurance shall be delivered in this State unless it conforms" to one of the descriptions thereafter set out in the section.
The insurance business, being affected with a public interest, is subject to reasonable regulation and control in the exercise of the public power to serve the public need. As was said in the Saffore case, above, 21 N.J., at page 310, quoting from Corbin on Contracts, § 551, p. 109 (1951), a specific provision integrated into the contract of insurance by force of a statute must, as a matter of public policy, "be interpreted and given effect in accordance with the intention of the legislature, irrespective of how the contractors understood it. Exactly the same result is reached even though the parties know nothing of the statute and do not include the provision, and even though they know of it and expressly agree upon the exact contrary."
There can be no doubt that the right to be a beneficiary may be qualified or limited to certain classes by statute. Where possible beneficiaries are so limited, the claimant must be within the class in order to recover as a beneficiary. *277 29 Am. Jur., Insurance, § 1273, p. 950 (1940); Britton v. Supreme Council of the Royal Arcanum, 46 N.J. Eq. 102 (Ch. 1889), affirmed 47 N.J. Eq. 325 (E. & A. 1890). And see Cessna v. Adams, 93 N.J. Eq. 276 (Ch. 1921). There being a conflict between the statutory provisions on the one hand, and the provisions of the policy on the other, the former must, on public policy grounds, prevail. The legislative mandate is clear and unequivocal: N.J.S.A. 17:34-31(A)(4) clearly precludes the insured employee from appointing his employer as his beneficiary. Accordingly, plaintiff, as decedent's employer, may not prosecute this action.
As defendant points out, the abuses that might result were there no such prohibition as the statute expressly declares are readily apparent. Employers and unions could exploit the lives of their employees and members by paying policy premiums and requiring or persuading the employees or members to name them as beneficiaries. This would result in a frustration of the general purpose of allowing such group insurance to be issued as a result of collective bargaining agreements.
Plaintiff also urges that the policy is now incontestable because of the passage of the one-year period mentioned in the incontestability clause. This contention must fall for the same reason as the one just considered. Additionally, it has generally been held that an insurance policy violative of public policy or good morals cannot be enforced simply because the incontestability period has run. 29 Am. Jur., Insurance, § 888, p. 680 (1940); Commonwealth Life Ins. Co. v. George, 248 Ala. 649, 28 So.2d 910, 170 A.L.R. 1032 (Sup. Ct. 1947); Home Life Ins. Co. of N.Y. v. Masterson, 180 Ark. 170, 21 S.W.2d 414 (Sup. Ct. 1929); Bernier v. Pacific Mut. Life Ins. Co. of Cal., 173 La. 1078, 139 So. 629, 88 A.L.R. 765 (Sup. Ct. 1932); Beasley v. Missouri State Life Ins. Co., 176 S.C. 156, 179 S.E. 777 (Sup. Ct. 1935); Annotation 170 A.L.R. 1046 (1947).
The judgment is affirmed.