412 So.2d 1364 (1982)
Phillip JACKSON
v.
CONTINENTAL CASUALTY COMPANY.
No. 81-C-1759.
Supreme Court of Louisiana.
April 5, 1982.
Rehearing Denied May 14, 1982.
Leo J. Berggreen, Baton Rouge, for plaintiff-applicant.
Paul H. Spaht, of Kantrow, Spaht, Weaver & Walter, Baton Rouge, for defendant-respondent.
WATSON, Justice.

ISSUE
Is a person who pays group insurance premiums for almost six years to insure the life of his "spouse" barred from collecting benefits for her death by the fact that their thirty-five year union was not a legal marriage?

FACTS
Plaintiff, Phillip Jackson, an illiterate Louisiana State University employee, was insured under a group policy with Continental Assurance Company. Beulah Jackson was enrolled for life insurance coverage as his spouse on September 8, 1973. Premiums for that coverage were deducted from Jackson's pay checks. After living with Phillip Jackson for thirty-five years, Beulah Jackson died on July 9, 1979. The two were never legally married, but Beulah Jackson was economically dependent on Phillip.
Continental Assurance Company contested liability because it was unaware the parties were not legally married until after Beulah's death. The trial court dismissed plaintiff's suit. The Court of Appeal affirmed because Beulah Jackson was not a "legal spouse" and therefore was ineligible for coverage. Jackson v. Continental Cas. Co., 402 So.2d 175 (La.App. 1 Cir. 1981). A writ was granted to review the judgment. 405 So.2d 532 (La.1981).

LAW
LSA-R.S. 22:176(2) requires that all group life insurance policies issued in the State of Louisiana have the following or an equivalent provision:
"(2) Incontestability: A provision that the validity of the policy shall not be *1365 contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue and that no statement made by an individual insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such individual's lifetime nor unless it is contained in a written instrument signed by him."

CONCLUSION
The Court of Appeal relied on Crawford v. Equitable Life Assurance Society of the United States, 56 Ill.2d 41, 305 N.E.2d 144 (1973), which held that a defense of ineligibility was not barred by an incontestability clause. Crawford reasoned that the question of eligibility for group coverage is not foreclosed because the insurer's risk and premium is affected by whether the insured was, as represented, an employee. "[E]mployment or active or full-time employment may protect the insurer against adverse selection." 305 N.E.2d at 150. Even on that point, the various jurisdictions "are not uniform in result." 305 N.E.2d at 149. See, for example, Simpson v. Phoenix Mutual Life Insurance Co., 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (1969).[1] The result in Crawford is also contrary to past Louisiana jurisprudence. See Michel v. Washington National Insurance Co., 315 So.2d 863 (La.App. 3 Cir. 1975); Allison v. Aetna Life Ins. Co., 158 So. 389 (La.App. 2 Cir. 1935); and Garrell v. Good Citizens Mut. Ben. Ass'n, 204 La. 871, 16 So.2d 463 (1943). Irrespective of its merits, Crawford's rationale is inapplicable here. The adverse selection factor is not present. Eligibility can be contested only if allowing coverage extends the risk beyond that contemplated by the insurer when the policy was written. Continental's exposure was not increased because the Jacksons' thirty-five year union was not blessed by the sacrament of matrimony. Their unmarried state, a very technical point in this factual situation, was apparently insignificant to Phillip and Beulah Jackson. He listed her as his "spouse" for insurance purposes. One who is, for all practical purposes, a spouse should not be barred from recovery by an irrelevant legal status. "[A]n immaterial, technical breach of condition should not be the occasion for forfeiture." 1979 Ill.Law Forum 817.
A dependent concubine or "common law wife" can recover workmen's compensation benefits because the insurer should not "benefit by the windfall" of discovering that there was an illicit rather than licit relationship. Henderson v. Travelers Insurance Co., 354 So.2d 1031 at 1034 (La.1978). Similarly, Continental, who has been paid premiums for life insurance coverage on Beulah Jackson, should not benefit from the belated discovery that she maintained a marital relationship without a legal marriage. For purposes of group insurance, there is no reason to distinguish between a dependent concubine who is scheduled as the "spouse" in an insuring agreement and a legal spouse.
The incontestability provision bars the defense urged by Continental because Jackson's policy had been in force over two years and the premiums had been paid. See Bernier v. Pacific Mut. Life Ins. Co. of California, 173 La. 1078, 139 So. 629 (1932).
For the foregoing reasons, the judgment of the trial and appellate courts herein are reversed and judgment is entered in favor of plaintiff, Phillip Jackson, for the benefits due under his policy with Continental Casualty Company for the death of Beulah Jackson.
REVERSED AND RENDERED.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs with reasons.
*1366 LEMMON, J., dissents.
BLANCHE and MARCUS, JJ., dissent and assign reasons.
CALOGERO, Justice, concurring.
I respectfully concur being of the opinion that the insurer in this case was barred by the incontestability clause in the policy from disputing the status of Beulah Jackson at the time of her death. I believe, however, that the distinction between a legal spouse and a common law spouse is more than an "immaterial, technical breach of condition" and that such a distinction may allow an insurer to defend against liability under a dependant coverage policy provision if the insurer contests the designation within the time limits of the policy's incontestability clause.
DENNIS, Justice, concurring.
I respectfully concur.
The incontestability clause in the insurance contract is very broad and general. It says that:
"Coverage as to any Insured Employee shall be incontestable, except for non-payment of premium after such coverage has been in force for two years from the Effective Date, and any statement made by any Insured Employee relating to his insurability under this policy shall not be used in contesting the validity of insurance with respect to which such statement was made unless it is contained in a written statement signed by the Insured Employee, nor shall such statement be used at all after the insurance has been in force prior to the contest for a period of two years during the lifetime of the Insured Employee."
The ordinary rules of construction apply to the incontestable provisions. In the absence of any doubt as to the meaning of the contract, the intention of the parties must be ascertained from the instrument. Where there is any doubt or ambiguity, however, such must be resolved against the insurer and in favor of the insured or the beneficiary, in accordance with the usual rules of liberal construction to effectuate the contract. The words of the clauses themselves must be interpreted as an ordinary man would read them, and not in any strained or technical manner. See 1 A. Appleman, Insurance Law and Practice § 311 and cases cited.
Applying the ordinary rules of construction, under the policy's incontestable clause, coverage based on the statement of an insured employee cannot be questioned after the employee has purchased the insurance and made timely payments of premiums for two years. Some incontestability clauses provided by insurance policies and statutes only bar attacks on the validity of the insurance contract after the expiration of a period of time. However the policy clause in this case is much broader and renders indisputable the coverage issued on the basis of an insured employee's statement after expiration of the prescribed period. There are, of course, other reasonable interpretations of the policy clause more favorable to the insurance company, but we should adhere to the precept of requiring a liberal construction of the insurance contract in favor of the insured or beneficiary and place responsibility for the clarity of the contract upon the insurer who drafted it. La.C.C. art. 1957; Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1953).
The narrower statutory incontestable clause, La.R.S. 22:176(2), which bars contests as to the validity of the policy, is not applicable in this case. The statute provides that an insurer may substitute an incontestable clause more favorable to the policyholder with the commissioner's approval. Id. The members of the emloyee group or their trustees are deemed to be the policyholder, La.R.S. 22:175(A), and the broader policy incontestable clause is more favorable to them. The policy clause has been approved by the commissioner. Accordingly, it governs this case.
The insurance code does not prohibit a group insurer from agreeing to an incontestable clause which prevents the dispute of a beneficiary's marital status after a period of two years. La.R.S. 22:175 merely *1367 provides that group life insurance, under certain circumstances, "may ... be extended to insure the spouse and minor children of the insured ... [and] [c]hildren of an insured who are full time students and who are under the age of twenty-four * * *." The code does not make clear whether this is a permissive or a mandatory provision, or, if the latter, whether unauthorized group insurance is absolutely void even as to an innocent insured or merely subjects the insurer to some type of regulatory sanction. In any event, none of these questions are relevant to this case. Even if La.R.S. 22:175 is a mandatory provision, it does nothing more than prevent an insurer from intentionally covering risks beyond the scope of the statute. It does not purport to prevent an insurer from inadvertently insuring such risks due to the expiration of the incontestability period.
The incontestable clauses are enforced with particularity because of the desirable purpose which they have. It is their purpose to put a checkmate on litigation; to prevent, after the lapse of a certain period of time, an expensive resort to the courts expensive both from the point of view of the litigants and that of the citizens of the state. 1 A. Appleman, § 311 p. 311.
Because coverage is incontestable under the policy and the insured employee's statement, it is unnecessary to discuss an interesting state constitutional question suggested by this case: Would a public employee group insurance policy which absolutely prohibits coverage of "common law" spouses, arbitrarily, capriciously or unreasonably discriminate against persons because of their culture? See La.Const.1974, Art. 1, § 3.
BLANCHE, Justice (dissenting).
Hard facts make bad law.
In the instant case, plaintiff urges that the incontestability provision contained in our insurance code, R.S. 22:176(2), precluded Continental's right to challenge the extension of coverage of his common law spouse. The insurer, on the other hand, contends that Beulah Jackson was not eligible for coverage because of the restrictions found in the group policy as well as the statutory limitations of R.S. 22:175(B)(7), which provides:
Insurance under any group life insurance policy except those policies issued pursuant to Paragraph (3) of Subsection A of the Section, may, if seventy-five percent of the then insured employees or members who have eligible dependents elect, be extended to insure the spouse and minor children of the insured in amounts in accordance with the plan which precludes individual selection by the employees or members or by the employer or trustee and which may not exceed fifty percent of the amount of insurance on the life of the insured employee. Children of an insured who are full time students and who are under the age of twenty-four may be included as eligible dependents.
Both the trial and appellate courts were of the opinion that, because the deceased was never within the penumbra of the policy or statutory provisions, the policy never took effect with respect to her. R.S. 22:175(B)(7).
Contrary to the holding of the majority, this writer concludes that the statutory limitations imposed by R.S. 22:175(B)(7) prohibit the extension of coverage under a group life policy to a common law spouse. Being well aware of Jackson's position, and sympathizing with his plight, the majority of this Court has chosen to ignore the express language of R.S. 22:175(B)(7), which clearly evidences a legislative mandate to limit the availability of group insurance to the insured employee's "spouse" and certain children.
Statutory rules may be either imperative or suppletive. Based on public policy considerations, an imperative rule applies without regard to the intentions of the parties concerned, whereas a suppletive rule applies only if those affected have not excluded its application. C.C. arts. 11 and 12; E. L. Burns Co., Inc. v. Cashio, 302 So.2d 297 (La.1974); Badon's Employment, Inc. v. Smith, 359 So.2d 1284 (La.1978); see also R. *1368 David, French Law: Its Structure, Sources and Methodology (1960 Ed., M. Kindred transl. 1972).
By allowing coverage under a group policy to include a spouse, minor children or children who are full-time students and under the age of 24, the legislature manifested a desire to limit the availability of group insurance to those who are legally related dependents of the insured employee. This restriction enables the insurer to provide coverage to the insurable class at great savings because the insurer has less cost and less risk in selling, underwriting and administering the policy. Rall and Sfikas, "Group InsuranceIs the Incontestability Clause a Bootstrap Which Enlarges Coverage, 5 The Forum 51 (1969); see also Gregg, Group Life Insurance (3rd Ed. 1962).
The first saving in group life cases is in the selling expense. The sale of one policy covering a large number of lives will not entail the selling expense inherent in the sale of a corresponding number of individual policies. The policyholder benefits from this because it can make available to employees, union members, or whoever constitutes the group, low cost insurance.
Underwriting expense is minimized by the fact that a true, homogeneous group furnishes its own cross section of risk, which makes unnecessary the examination of the individual risks comprising the group. Any rule of law, from whatever source, which places on the insurer the necessity of having to underwrite individual risks, departs from the essential plan underlying group insurance. Unless this is resisted vigorously, the proved economies of group life insurance will be squandered.
The third great saving in group cases is in the self-administration of the plan by the policyholder (usually the employer). A rule of law which precludes reliance by the insurer on the trustworthiness of self-administration, and thus requires the insurer's excessive participation in administration of the group policy is disadvantageous. The Forum, supra, at 56.
The limitations of availability contained in the subject group policy, which parallel the provisions of R.S. 22:175(B)(7), insure that the selling, underwriting and administration advantages which are characteristic of group policies, are amply safeguarded. To conclude that the insurable class under group policies is broader than that expressed by the legislature would preclude the existence of these unique features of group contracts.
By allowing recovery in the instant case, this Court has sanctioned unauthorized extensions of coverage which would permit insured employees to seek insurance on the lives of any individual, regardless of a legally protected interest in that person. Such "wagering contracts" on insurance risks are clearly contrary to public policy.
In the present case, Beulah Jackson was plaintiff's common law spouse. As noted by the court of appeal:
Louisiana does not recognize the `common law marriage.' LSA-C.C. art. 88; Liberty Mutual Ins. Co. v. Caesar, 345 So.2d 64 (La.App. 3 Cir. 1977), writ denied, 347 So.2d 1118 (La.1977). Hence, Beulah Jackson was not the `legal spouse' of Phillip Jackson. The lower court, following Harris v. Lumbermen's Mutual Cas. Co. of Chicago, 48 So.2d 728 (La.App. 1 Cir. 1950), held that a `spouse' means `one's wife or husband'. We agree. Inasmuch as Beulah Jackson was never the `legal spouse' of Phillip Jackson, she was not eligible for coverage under the subject group life insurance policy.
Though the deceased was, at all times, financially dependent upon plaintiff, the legislative decision to limit the availability of group insurance only to those individuals legally related to the insured employee cannot be ignored. See Gill v. General American Life Ins. Co., 434 F.2d 1057 (8th Cir. 1970). Thus, even if the Jacksons' unmarried state was "apparently insignificant" to them, it is clear that an individual's legal status was of major concern to the legislature and not, as the majority concludes, "a very technical point". Because the attempt to include Beulah Jackson under the group *1369 policy went beyond the legislatively designated perimeter of availability, it was completely null and had no legal effect. C. L. Burns v. Cashio, supra; Badon's Employment, Inc. v. Smith, supra. Consequently, Louisiana's statutory incontestability provision, R.S. 22:176(2) is inapplicable to the present situation and Continental is not precluded from challenging coverage of Beulah Jackson under the group policy.
Further, the majority's reliance on Bernier v. Pacific Mut. Life Ins. Co. of California is misplaced. Bernier dealt with an individual, rather than a group, life insurance policy. More important, because the Bernier decision arose nearly 15 years before our insurance code was enacted, this Court's holding rested solely upon the incontestability clause in the policy. Accordingly, this writer is of the opinion that Bernier is inapplicable to the resolution of the present dispute.
Because I believe that the holding of the lower courts was correct, I respectfully dissent.
MARCUS, Justice (dissenting).
I am of the opinion that the judgment of the court of appeal is correct. Accordingly, I respectfully dissent.
CALOGERO, Justice, concurring in denial of rehearing.
"Coverage as to any insured employee shall be incontestable" after two years, construed liberally to effectuate this contract, in favor of the insured and against the insurer/confector of the contract, surely was meant to bar a contest as to coverage of the dependent insured designated by the insured employee.
NOTES
[1] Crawford and Simpson are analyzed in Vol. 1979 of the University of Illinois Law Forum at 809.