671 So.2d 1199 (1996)
Steven G. CRIGLER, Plaintiff-Appellant,
v.
David CRIGLER, et al., Defendant-Appellants.
Nos. 28,085, 28,107 and 28,108-CW.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
Writ Denied June 7, 1996.
*1200 John W. Wilson, for Appellant, Steven G. Crigler.
Abrams & LaFargue by Reginald W. Abrams, Julie Mobley LaFargue, Shreveport, for Appellants, David Crigler & Sherry Johnston.
Rountree, Guin, Cox & Achee by Dale G. Cox, Shreveport, for Appellant, Allstate Insurance Co.
Before HIGHTOWER, BROWN and GASKINS, JJ.
GASKINS, Judge.
The parties to this litigation each sought supervisory review of a partial summary judgment rendered by the Twenty-Sixth Judicial District Court. The extent of coverage under a renter's insurance policy and liability *1201 for injuries sustained in a household kitchen fire are at issue.

FACTS
Sherry Johnston and David Crigler lived in open concubinage in Bossier City, Louisiana for some thirteen years. In July 1993, the couple lived in a house they co-leased together on Jane Street. Prior to moving to this address, the couple had rented another residence during which time Ms. Johnston had procured a policy of renter's insurance issued by Allstate. This policy was updated to reflect the Jane Street address following the couple's move. The policy's declaration page reflected Ms. Johnston as the sole insured.
In early July, the couple was visited by Crigler's brother, Steven Crigler. At the conclusion of David Crigler's work shift on July 8, the two brothers embarked on an evening of drinking. When they arrived home at approximately 2:00 a.m., David woke Ms. Johnston to let her know of their return. Ms. Johnston expressed her anger over David's drinking and his failure to notify her earlier of his whereabouts. She asked the brothers to be quiet and returned to her slumber.
David and Steven watched television and drank beer for a short while before David entered the kitchen to cook french fries for a late-night snack. He placed grease in a skillet, turned the stove on medium, went into the living room, and fell fast asleep. Moments later, David was awakened by the sounds of fire. He ran into the kitchen to find the grease ablaze. He attempted to douse the flames with water; however, this caused the burning grease to splatter onto the floor. Steven, who had been sleeping in another room, heard David's cry for help and ran barefooted to his brother's aid. Running into the kitchen, Steven slipped and fell in the burning grease and sustained severe burns to his feet, ankles, arms, and back.
Steven eventually brought suit against David Crigler, Sherry Johnston, and Allstate. Allstate denied liability on the part of Ms. Johnston and denied that its policy of insurance covered David Crigler. Allstate moved for summary judgment on both grounds. A partial summary judgment was granted with respect to the denial of coverage for David Crigler. The trial court, however, concluded that genuine issues of material fact existed concerning the liability of Ms. Johnston and denied summary judgment in this respect. Allstate's supervisory writ was granted for a review of the denial of summary judgment on the issue of Ms. Johnston's liability. The Crigler brothers seek review of the partial summary judgment which held that David Crigler was not an insured under the subject policy.

DISCUSSION
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to a material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. Art. 966; Aufrichtig v. Progressive Men's Club, 25,581 (La.App.2d Cir. 03/30/94), 634 So.2d 947. We begin our review with the Crigler brothers' assertion that the insurance contract was ambiguous and that David Crigler was an insured under the policy.

Coverage for David Crigler
Allstate successfully argued that David Crigler was not an insured under the policy sold to Sherry Johnston. The insurer's argument was simply based upon the language of the policy and the relationship between the parties. The renters' insurance policy sold to Ms. Johnston provides definitions for various terms used within the substantive language of the policy. The relevant definitions are the following:
1. "You" or "Your"means the person named on the declarations page as the insured and that person's resident spouse.
. . . .
3. "Insured person"means you and, if a resident of your household:
a) any relative; and
b) any dependent person in your care.
Allstate argued that Sherry Johnston is the only named insured on the policy's declarations page. Ms. Johnston and David Crigler were not married and David was, therefore, *1202 not Ms. Johnston's spouse. Neither was David Ms. Johnston's relative or a dependent under her care. The trial judge agreed and concluded that David Crigler was not an insured under these terms.
On appeal, the Crigler brothers argue that the insurance policy was ambiguous because it used, yet failed to define, the term "spouse." In essence, the brothers ask us to conclude that the term "spouse" is equivocal, thereby rendering the policy ambiguous and susceptible to construction against the drafter.
We are guided in our analysis by several elementary principles regarding the construction of insurance policies. These principles were concisely summarized in Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-C-0911 (La. 01/14/94), 630 So.2d 759:
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent.
The parties' intent as reflected by the words in the policy determine [sic] the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.
"Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." The court should construe the policy "to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry." ...
Yet, if the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written....
Louisiana Insurance Guaranty Association, supra. (Citations omitted.)
While the term "spouse" in the insurance contract was not defined, the word is ordinarily used to mean a partner in marriage. Louisiana recognizes no marriage other than the legal relationship created by civil contract. La.C.C. Art. 86.
Sherry Johnston and David Crigler were not legally married at the time of the fire. Rather, they had lived in open concubinage, with occasional separations, since 1980. While modern society tolerates many forms of inter-personal relationships, we do not feel that acceptance is wide enough to warrant the judicial expansion of the term "spouse" to include one's paramour or concubine, regardless of the merits or stability of the relationship.
The Crigler brothers argue that meaning of the term "spouse" has already been judicially expanded to include non-marital relationships. Specifically, the brothers point to the following language found in Jackson v. Continental Casualty Co., 412 So.2d 1364 (La.1982):
Their unmarried state, a very technical point in this factual situation, was apparently insignificant to Phillip and Beulah Jackson. He listed her as his "spouse" for insurance purposes. One who is, for all practical purposes, a spouse should not be barred from recovery by an irrelevant legal status.
Jackson, 412 So.2d at 1365.
In Jackson, an insurer contested liability for a claim made by a group member on a group life insurance policy. The member had specifically named his concubine of nearly thirty years as his "spouse." Six years later, she passed away. The insurer contested liability on the basis that it was unaware that the parties were not legally married. Relevant to the issue was a statutory incontestability *1203 clause that prohibited an insurer from contesting liability, except for non-payment of premiums, after the policy had been in effect for two years from the date of issue. The supreme court stated that eligibility can be contested only if allowing coverage extends the risk beyond that contemplated by the insurer when the policy was written. Beulah Jackson was listed in the policy of insurance and there was no increase in the risk to the insurer due to the absence of a legal marriage. The court's holding was succinctly stated as follows:
The incontestability provision bars the defense urged by Continental because Jackson's policy had been in force over two years and the premiums had been paid.
Jackson, supra.
The brothers also point to the earlier decision of Henderson v. Travelers Ins. Co., 354 So.2d 1031 (La.1978). In Henderson, a man and woman lived together out of wedlock in a stable, loving relationship for approximately eleven years. When the paramour was killed in a job-related accident, his concubine sought to recover workers' compensation benefits as an "other dependent" and "member of the family." The court reviewed the socio-economic purpose of the Louisiana workers' compensation scheme and noted that the goal was to allow compensation to those who were dependent upon an employee for support. The court found no legislative intent to deny compensation benefits to any dependent member of the decedent's household. Refusing to recognize moral turpitude as a bar to recovery, the court concluded that the concubine was entitled to receive compensation benefits as a dependent of the deceased worker.
Neither of these decisions support the position advocated by the Crigler brothers. The language the brothers rely on from Jackson is dicta and is therefore not authority for the recognition of paramours and concubines as "spouses." The Henderson decision simply recognizes that a concubine, in the absence of preferred beneficiaries and under certain narrow facts, can be recognized as a dependent eligible for workers' compensation death benefits.
The generally prevailing definition of the term "spouse" implies the existence of a legally recognized marriage and does not lend itself to use as reference to partners living out of wedlock. Contrary to the Crigler's assertions, our jurisprudence has not crafted or recognized a distinction between mere "spouses" and "legally married spouses." We conclude that the term "spouse," as used in the insurance policy sold to Sherry Johnston, is not sufficiently broad to include her paramour, David Crigler. Furthermore, the common meaning for the term "spouse" is sufficiently uniform to preclude confusion and is not susceptible to multiple interpretations. The term is not equivocal and its use does not render the policy ambiguous.
The Criglers also argue that the policy is rendered ambiguous because the word "family" is an undefined term used within the policy in a heading titled "Family Liability and Guest Medical Protection." The explanation of coverage found under this title implements terms defined within the policy, and does not refer to "family" or "spouse." The object of this contract of insurance is to provide property and personal liability insurance to those named and defined as insureds. Construing the policy as a whole, we conclude that the term "family" necessarily refers to a group comprised of insureds. The relevant meaning of the term "family" is, therefore, with reference to husbands, wives, children and relatives rather than a group merely cohabitating under one roof. The term "family" and its usage here does not render this policy of insurance ambiguous.
The Criglers also argue that David reasonably believed that he was an insured under the policy. In support of their equity-based argument, the brothers note that Allstate accepted payments from a joint checking account bearing both David Crigler's and Ms. Johnston's names. Moreover, the brothers note that Ms. Johnston's Allstate agent knew that the couple lived together out of wedlock. In essence, the brothers seek to introduce extrinsic evidence in order to determine the coverage provided by the policy.
Generally, where the words of a contract are clear, explicit, and lead to no absurd consequences, the meaning and intent *1204 of the parties must be sought within the four corners of the document and cannot be explained or contradicted by parol or extrinsic evidence. La.C.C. Art. 2046; Billingsley v. Bach Energy Corp., 588 So.2d 786 (La. App.2d Cir.1991). The alleged ambiguities the brothers rely upon to warrant admission of extrinsic evidence stem from the terms "spouse" and "family." We considered these terms above and concluded that their usage does not render the instant insurance contract ambiguous. In the absence of ambiguities, the extrinsic evidence was properly not considered.
The subject contract of insurance is not ambiguous and its terms clearly do not provide coverage for David Crigler. Summary judgment in favor of Allstate on this issue of coverage was therefore appropriate.

The Liability of Sherry Johnston
On July 8, 1993, Sherry Johnston spent the evening at her brother's home. Battling pneumonia, Ms. Johnston returned to her house on Jane Lane and retired early. When David Crigler woke her upon his return home, it was readily apparent that he had been drinking. Ms. Johnston, nonetheless, returned to her sleep. She was awakened later by the sounds of David Crigler attempting to battle the kitchen fire. Walking toward the kitchen, Ms. Johnston passed Steven Crigler who had already sustained his injuries and was headed toward the front exit of the house.
Based on these facts, Allstate moved for summary judgment on the grounds that its insured, Sherry Johnston, was not liable for Steven Crigler's injuries. Allstate's motion was denied. On appeal, Allstate argues that Ms. Johnston was neither vicariously liable, strictly liable, nor negligent and that the denial of summary judgment on this issue was improper. We agree.
La.C.C. Art. 2317 provides the general statement on delictual acts giving rise to strict liability:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however is to be understood with the following modifications. Under this general provision, one may recover on the basis of strict liability by showing that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect, that is, some condition which occasioned an unreasonable risk of injury, and that the injury was caused by the vice or defect. Jones v. City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (1980).
There is a relevant distinction made between a defect in the premises giving rise to strict liability and a defect on the premises which would give rise to a general negligence claim. A foreign object on the premises (i.e., grease, filth and debris on a stairwell or a lemon slice upon the ground) does not constitute a defect in the premises for purposes of strict liability. Davis v. Housing Authority of New Orleans, 93-0566 (La.App. 4th Cir. 2/25/94), 633 So.2d 810; Collins v. Christophe, 479 So.2d 537 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La.1986). Fire, loosed from a pan upon a stove top, is clearly a foreign object creating a defect on the premises and is therefore not a defect in the premises.
The specific articles addressing strict liability which follow La.C.C. Art. 2317 are inapplicable to the facts presented in this case. Sherry Johnston could not be found strictly liable for the injuries sustained by Steven Crigler.
We are likewise unable to determine a basis whereby an adult concubine is vicariously liable for the acts of her adult paramour. All that remains is the question of negligence on the part of Ms. Johnston.
Where negligence is alleged, a finding of liability is predicated upon the existence of a duty and a subsequent breach thereof. Whether a duty is owed is a question of law, but whether the duty is breached is a question of fact. Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La.1993). David and his brother argue that Ms. Johnston was aware that David had been drinking, that he typically prepared late night snacks, and that he enjoyed fried foods. *1205 Thus, they argue that Ms. Johnston owed a duty to Steven Crigler to warn him of the reasonably foreseeable hazards posed by David's behavior.
We note first that Steven Crigler, as his brother's companion for the night, was fully aware of David's alcohol consumption and resulting condition. The brothers had spent part of the night at a downtown Shreveport bar. They then bought a six-pack of beer at a convenience store and returned home where they watched television and consumed the beer. Both brothers were awake when David entered the kitchen to commence his ill-fated cooking attempt. We cannot see that Ms. Johnston had a duty to warn Steven Crigler about David's alleged inebriated state.
Neither can we conclude that the kitchen mishap was foreseeable so as to give rise to a duty to warn. While Ms. Johnston was aware that David liked to cook late at night, there was no history of any prior kitchen fires or other accidents. Moreover, as a trained chef, David was familiar with the stove, the hazards posed by grease fires, and the proper method to extinguish such a blaze.
Under these facts, we cannot conclude that Ms. Johnston owed a duty to warn Steven Crigler about potential hazards related to his brother's behavior. David's alcohol consumption should have been apparent to Steven and the risk of a grease fire was not reasonably foreseeable in light of David's expertise and the absence of previous problems. We can find no other duty owed to Steven Crigler by Sherry Johnston that would have prevented the injuries in question.
The pleadings and depositions of Sherry Johnston and David Crigler do not support a finding of liability on the part of Ms. Johnston. Accordingly, the trial court erred in failing to grant summary judgment on this issue.

CONCLUSION
The trial court properly granted summary judgment in favor of Allstate on the issue of David Crigler's status as an insured. The trial court, however, erred when it concluded that genuine issues of material fact existed concerning Sherry Johnston's liability for Steven Crigler's injuries. The record does not support the imposition of liability on Ms. Johnston under any recognized theory of recovery. Accordingly, we reverse the trial court's denial or summary judgment on the issue of Ms. Johnston's liability. Costs of this appeal are apportioned equally between David and Steven Crigler.
AFFIRMED IN PART; REVERSED IN PART.
BROWN, Judge, concurring in part, dissenting in part.
I agree that Sherry Johnson was not liable and was entitled to summary judgment. I disagree that the Allstate policy did not provide coverage for the acts of David Crigler.
David and Sherry cohabitated together for thirteen years in a relationship that began in their late teens. They leased property in both of their names, shared bank accounts, and pooled their resources. They held themselves out as husband and wife and maintained their household and conducted their affairs in the manner of those who are legally married. There is no public policy or reason not to allow coverage for David Crigler. As in Jackson, supra, coverage should not be based on an "irrelevant legal status."
In 1989, Allstate's agent received a customer service request to affect the change of address to Jane Street. This request listed three (3) people as residing in the house. At that time, there was no increase in premiums. Ironically, Ms. Johnston's brother, as a relative residing at the premises, would have been covered under the terms of the policy which was paid for in part by David Crigler. Any cohabitant could have been listed and covered without an increase in risk to the insurer. David Crigler's expectation of coverage was reasonable under these circumstances.
Further, under the general terms of the instant policy, which is a standard Allstate renters policy, David Crigler would be an insured if he and Sherry Johnston lived in a state where common law unions could be legally formed. Moreover, if Johnston and *1206 Crigler had forged their relationship in a state that allowed common law unions, and then subsequently moved to Louisiana, such a union would have been recognized here and Crigler would have been considered Johnston's spouse. See Brinson v. Brinson, 233 La. 417, 96 So.2d 653 (1957). Because, however, their union was created in Louisiana, Allstate seeks to limit its liability on grounds that the absence of a valid marriage precludes recognition of David Crigler as a "spouse."
It is relevant that Allstate does not seek to limit its liability through operation of a carefully drafted exclusion. Rather, Allstate seeks to benefit from a technicality stemming from the Louisiana law pertaining to the valid confection of marriages. The exploitation of this technicality elevates form over substance and leads to an unjust consequence.