797 So.2d 686 (2000)
Jerry M. GRAVOIS, Individually and on Behalf of the Minor Chelsey Lynn Gravois, and Mary Crochet Gravois
v.
DELTA AIRLINES, INC. and Baton Rouge Metropolitan Airport.
No. 99 CA 0824.
Court of Appeal of Louisiana, First Circuit.
May 12, 2000.
Woodrow W. Wyatt, Baton Rouge, Counsel for Plaintiffs/Appellants Jerry M. *687 Gravois, Individually and on Behalf of the Minor Chelsey Lynn Gravois, and Mary Crochet Gravois.
C. Michael Pfister, Dana Anderson-Carson, Metairie, Counsel for Defendants/Appellees Delta Airlines, Inc. and Baton Rouge Metropolitan Airport.
Before: GONZALES, FITZSIMMONS, and WEIMER, JJ.
WEIMER, Judge.
Plaintiffs, Jerry and Mary Crochet Gravois, brought suit against Delta Airlines, Inc. (Delta) and Baton Rouge Metropolitan Airport District (Airport) for personal injuries Jerry Gravois received while performing his duties as an employee of Air Host, Inc. (Air Host), a commercial airline catering service. Defendants, including Fireman's Fund Insurance Company, filed a motion for summary judgment, which was granted by judgment dated November 16, 1998. Plaintiffs perfected this appeal. We affirm.

BACKGROUND
The facts surrounding the incident in question were supplied by Gravois in his deposition. Gravois was interviewed and hired by Cecil Provines, the general manager for Air Host in Baton Rouge, an airline caterer. Gravois began work for Air Host during the latter part of October 1989. Until the day of the accident, he worked with and under the supervision of Jeff Provines. On the day of the accident, November 7, 1989, Jeff Provines was absent because of illness, and Gravois was required to service the planes alone.
The usual routine for servicing the planes was for two Air Host employees to ride on the tarmac to the plane with the driver in the cab of an Air Host truck that was loaded with meals and/or drinks to be placed on the plane. While the jet engines were idling, the Air Host employees would board the plane to place the caterer's food and supplies in the two kitchens and to remove the "leftovers" from the previous flights. After the plane was loaded and the leftovers placed on the Air Host truck, the driver would leave in the truck. The two Air Host employees would station themselves near the door of the plane so they could supply the flight attendant with "bank meals"[1] for any last minute passengers. Once the passengers boarded and all the necessary meals were supplied, the flight attendant signed a receipt, and the Air Host employees returned to the kitchen with any bank meals that had not been needed. The entire procedure did not generally take more than 15 minutes.
On the days that Gravois worked with Jeff Provines, the two men had positioned themselves in the jetway where the passengers were entering in order to have the bank meals at the ready. On the day of the accident, when Gravois was working alone, the jetway was not used for the particular Delta flight that he was loading. The Delta jet had not stopped at the usual gate because of some construction on the tarmac. The passengers were boarding via portable outdoor stairs. After the plane was loaded, Gravois placed himself at the top of the stairs in order to be able to supply the required bank meals.
When the flight attendant signed the receipt and closed the door of the plane, Gravois descended the stairs, picked up the remaining bank meals, and headed toward the kitchen. The driver of the vehicle that transported the stairs drove away *688 from the plane in another direction. This was the first time Gravois had been outside on the tarmac when a flight departed, as all other times he and Jeff Provines had been in the jetway.
Before Gravois could reach his destination, he was overcome with the noise of the jet preparing for takeoff. He dropped the meals he was carrying, covered his ears with his hands, and fell to the ground in pain.
Gravois testified at deposition that Delta never supplied him with any written instructions concerning his duties or any verbal warnings concerning safety while in the vicinity of the planes. However, he admitted he observed various Delta service personnel wearing "ear muffs" while working near the planes. He did not observe Jeff Provines or any other Air Host employees wearing earplugs or other protective devices. Cecil Provines testified Air Host kept earmuffs in the truck, but wearing them was optional with the employees. When questioned about any written safety manual, Gravois admitted when he reported for work on the first day, Cecil Provines gave him "something from American Airlines," but he did not recall what it was.
Shortly after the incident, Gravois attempted to return to work for Air Host, but because of loss of balance, he could not complete the day. On the date of his deposition, he stated he was still classified by his doctors as totally disabled.
In support of their motion for summary judgment, the defendants introduced excerpts from the deposition of Donald R. Kincaid, Air Host's regional vice-president, who testified that Air Host had adopted the series of manuals used by American and Sky Chef. This fact was verified by plaintiffs' witness, Cecil Provines. Excerpts from one such manual were attached as exhibits. The pertinent provision of the section entitled "Work Rules" provides as follows:
3. Protective hearing devices that meet OSHA requirements must be worn at all times when you are in an exposed area on the ramp, i.e., while aircraft engines are running and/or while auxiliary power units (APU) are in operation on the aircraft. Local management will supply these devices. These ear protectors are worn to ensure you have no hearing loss due to continued/excessive noise exposure while performing your duties.
Defendants' exhibits in support of their motion for summary judgment were unrefuted.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria as those governing the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Lejano v. Bandak, 97-0388, pp. 24-25 (La.12/12/97), 705 So.2d 158, 171, cert. denied, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998).
There are no factual disputes in this matter. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. See Gonzales v. Xerox Corporation, 320 So.2d 163, 165 (La.1975); State, Louisiana Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 95-2355, p. 5 (La.App. 1 Cir. 8/21/96), 694 So.2d 316, 319. Accordingly, *689 we have examined the applicable law and conclude the district court correctly granted summary judgment dismissing plaintiff's petition.
A plaintiff in a personal injury action must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element). Fowler v. Roberts, 556 So.2d 1, 4 (La. 1989), reh. granted on other grounds and original opinion reinstated as supplemented, 556 So.2d 1 (La.1990). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Mathieu v. Imperial Toy Corporation, 94-0952, p. 11 (La.11/30/94), 646 So.2d 318, 326. Daye v. General Motors Corporation, 97-1653, p. 9 (La.9/9/98), 720 So.2d 654, 660.
The critical question presented in this case is whether the defendants had a duty either to limit the noise of the jet or to anticipate that authorized personnel on the tarmac would not be wearing ear protection devices. The answer to this question does not require a credibility determination. This is a question of law. See Fowler v. Roberts, 556 So.2d at 4-5. Jets make a substantial amount of noise; there is no duty to operate a jet quietly. The jet was being operated in an ordinary, customary, and appropriate manner, in an appropriate place. The plaintiff had an obligation to conform his activity to the ordinary operation of the jet. There was no duty to conform the operation of the jet to accommodate Gravois. Gravois was working in an airport, in an area where loud jets take off.
Even accepting as true Gravois's version of the accident, the fact that a sudden blast of noise from the aircraft caused him serious injury does not give rise to a duty on the part of Delta or the Airport to anticipate that an employee of Air Host would disregard the clear and obvious safety measures mandated by the safety manual. Finding that the airline has a duty to clear all personnel from the tarmac before jets prepare for takeoff would place an inordinate burden on air traffic and may well create congestion that would endanger a great number of people for the sake of protecting one person who failed to heed the common sense warning in the manual concerning "excessive" noise.
We hold there is no duty on the part of the airline or the airport to determine that those who work near the jets are adequately protected from the noise before the jet begins its journey.
Thus, we agree with the trial court that Gravois would not have been injured if he had been wearing protective ear gear. This is not an issue of comparative fault, as the plaintiffs suggest on appeal. There was simply no duty to ascertain whether those in the area were wearing ear protection devices before the jet took off.

CONCLUSION
We agree with the trial court that the defendants were entitled to judgment as a matter of law. We affirm the judgment of the trial court granting the defendants' motion for summary judgment and dismissing the plaintiffs' petition. We assess plaintiffs with costs of this appeal.
AFFIRMED.
NOTES
[1] "Bank meals" were meals the caterer prepared in addition to those ordered in advance by the airline. Any bank meals not required for the flight were returned to the Air Host kitchen by the employees.