830 So.2d 307 (2002)
Francis (Frank) Paul CLEMENTS, Sr.
v.
Reva Kay Hulan FOLSE as Executrix of SUCCESSION OF Betty Parker CLEMENTS, Reva Kay Hulan Folse, Individually, and Lewis Hulan, Individually.
No. 2001 CA 1970.
Court of Appeal of Louisiana, First Circuit.
August 14, 2002.
Writ. Denied November 15, 2002.
*309 Julius P. Hebert, Jr., Brian J. Marceaux, Houma, Counsel for Plaintiff/Appellant Francis Paul Clements, Sr.
Martha J. Maher, New Orleans, Counsel for Defendant/Appellant Reva Kay Hulan Folse as Executrix of Succession of Betty Parker Clements.
Pamela B. Lolan, New Orleans, Counsel for Defendants/Appellees Reva Kay Hulan Folse, Individually, and Lewis Hulan, Individually.
Before: CARTER, C.J., PARRO and *310 CLAIBORNE,[1] JJ.
CLAIBORNE, J.
This appeal challenges a declaratory judgment determining that the children, Reva Kay Hulan Folse and Lewis Hulan (Reva and Lewis), of the decedent, Betty Parker Clements (Betty), were entitled to the proceeds of an insurance policy. The decedent's former husband, Francis Paul Clements, Sr. (Frank), and Reva as executrix of the succession of Betty (the estate), appeal the district court judgment. We affirm.

FACTS AND PROCEDURAL BACKGROUND
Before embarking on a trip to Hawaii in 1999, Betty purchased coverage under a blanket group accidental death insurance policy (the policy), which provided family coverage and a $100,000 death benefit, through a telemarketing offer by her credit card company, Orchard Bank.[2] The effective date of the coverage, as evidenced by the certificate of insurance, was May 6, 1999. Because the coverage was sold to Betty over the telephone, an oral designation of beneficiary could not be accepted by the insurer, Continental Insurance Company (CNA), although Betty could have made a written beneficiary designation at any time. A third-party administrator for group policies issued by CNA, Benefits Consultants, Inc. (BCI), mailed the certificate of insurance to Betty three days after she purchased the coverage. The certificate of insurance outlined the terms of the insurance policy, including a payment of claims clause providing a list of "successive preference beneficiaries" to be paid when there are no designated beneficiaries. Betty never made a written designation of beneficiary for the insurance coverage.
Betty died testate on March 7, 2000, after complications from injuries she sustained in a November 1999 automobile accident. Betty was survived by her two adult children, Reva and Lewis. At the time of Betty's death, she was living with her ex-husband, Frank, but they were not married. Betty and Frank had previously been married to each other twice and divorced twice; the last divorce was final on November 6, 1987. In her will dated February 17, 1995, Betty named her daughter, Reva, testamentary executrix, and provided for the distribution of assets of her estate through a trust. The will also established a usufruct of the assets and interest thereon in favor of Frank until his death.
After Betty's death, Reva, as executrix of Betty's estate, filed a claim form with BCI on the CNA policy at issue. Reva left the space for identity of a surviving spouse blank on the claim form. She completed the space for no surviving spouse and identified Betty's surviving children. She then attached to the claim form the autopsy report and obituary, both stating that Frank was Betty's surviving spouse. BCI investigated and informed CNA of the claim. CNA determined that there was no written designated beneficiary on the policy. CNA then followed the payment of claims clause in the certificate of insurance and master policy, which provided that in *311 the event of no named beneficiary, the benefits would be paid to a successive preference of beneficiaries beginning with the surviving spouse, children, parents, siblings, and finally the estate. CNA tendered the full policy benefit of $100,000 to Frank, believing that he was Betty's surviving spouse. After learning that Frank had received the insurance proceeds, Reva and Lewis retained counsel and demanded that Frank return the $100,000 policy proceeds to them as Betty's surviving children because Betty had no surviving "spouse."
On October 13, 2000, Frank filed a suit for "Declaratory Judgment and Concursus on Life Insurance Proceeds," but Frank did not request leave of court to deposit the $100,000 at issue into the registry of the court. Betty's estate also claimed ownership of the insurance proceeds under La. R.S. 22:215(A)(3)(g), which provides that when there is no designated beneficiary in the insurance policy, the proceeds belong to the estate. The parties entered into a consent judgment for an injunction prohibiting Frank from spending the $100,000 that was in a certificate of deposit at the Synergy Bank and Trust Company of Houma, Louisiana, pending a determination of ownership of the insurance policy proceeds.
The matter came before the district court for trial on April 25, 2001. In its oral reasons for judgment, the district court found that this was a suit for declaratory judgment and not technically a concursus proceeding because the policy proceeds at issue were never deposited into the registry of the court.[3] The district court also found that the language in the certificate of insurance and master policy providing for the payment of claims was not in conflict with the statute, La. R.S. 22:215(A)(3)(g), governing blanket health and accident policies, and that the policy clearly designated a successive class of beneficiaries entitled to the proceeds if there was no specific beneficiary designated by the insured. The district court reasoned that because Frank was not the legal spouse of Betty at the time of her death, insurance proceeds were to be paid to Betty's children, Reva and Lewis, as the next class of beneficiaries in line in the policy. The district court then assessed all costs to Frank.
This appeal by Frank and the estate followed, each arguing that Louisiana insurance law requires payment of the proceeds to the estate where there is no written, named beneficiary designated in the policy. In the alternative, Frank argues that he should be awarded the insurance proceeds because he is Betty's surviving common-law "spouse," and as such, he is in the first class of beneficiaries designated in the policy. Frank also contends that the district court erred in concluding that the case was not a concursus proceeding and ordering him to pay all court costs instead of splitting the costs amongst the parties or ordering the costs to be deducted from the disputed insurance proceeds.

STANDARD OF REVIEW
There are no factual disputes in this case.[4] The assignments of error involve the interpretation of the insurance *312 policy language and statutory language. Interpretation of an insurance contract is a question of law. Minor v. Casualty Reciprocal Exchange, 96-2096, p. 3 (La.App. 1st Cir.9/19/97), 700 So.2d 951, 953, writ denied, 97-2585 (La.12/19/97), 706 So.2d 463. Likewise, statutory interpretation is a question of law. Shell v. Wal-Mart Stores, Inc., XXXX-XXXX, p. 4 (La.App. 3d Cir.3/21/01), 782 So.2d 1155, 1158, writ denied, XXXX-XXXX (La.6/15/01), 793 So.2d 1244. Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. City of Baker School Board v. East Baton Rouge Parish School Board, 99-2505, p. 2 (La.App. 1st Cir.2/18/00), 754 So.2d 291, 292. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. Gravois v. Delta Airlines, Inc., 99-0824, p. 4 (La.App. 1st Cir.5/12/00), 797 So.2d 686, 688, writ denied, XXXX-XXXX (La.9/15/00), 769 So.2d 545.

LAW AND ANALYSIS
The legal question posed by this appeal is whether the payment of claims clause in the CNA policy, providing for payment of benefits to "successive preference beneficiaries" when no beneficiary has been designated by the insured, conflicts with the statute governing blanket group health and accident insurance policies, and in particular La. R.S. 22:215(A)(3)(g), which provides for payment of benefits to the estate when there is no designated beneficiary. Before addressing this issue, we note the well-established, general rules of insurance contract interpretation.
An insurance policy is subject to the general rules of contract interpretation set forth in the Louisiana Civil Code. Succession of Fannaly v. Lafayette Ins. Co., XXXX-XXXX, p. 2 (La.1/15/02), 805 So.2d 1134, 1135. The insurance policy is a contract, which constitutes the law between the parties. Marcus v. Hanover Ins. Co., Inc., 98-2040, p. 4 (La.6/4/99), 740 So.2d 603, 606. When interpreting an insurance contract, courts must attempt to discern the common intent of the insured and insurer. Succession of Fannaly, XXXX-XXXX at 2, 805 So.2d at 1135; see La. Civ.Code art. 2045. Courts begin their analysis with a review of the words in the insurance contract. Words in an insurance contract must be given their generally prevailing meaning; however, words of art or technical terms must be given their technical meaning. See La. Civ.Code art. 2047. Courts must enforce the insurance contract as written when the words are clear and explicit and lead to no absurd consequences. See La. Civ.Code art. 2046. However, if the insurance contract's provisions are ambiguous, the courts will construe the ambiguous provision against the insurer who prepared the insurance contract's text and in favor of the insured. See La. Civ.Code art. 2056; Succession of Fannaly, XXXX-XXXX at 2, 805 So.2d at 1135. Furthermore, absent a conflict with statutory provisions or public policy, the insurance policy must be enforced as it is written. See Marcus, 98-2040 at 4, 740 So.2d at 606.
In In Re Louisiana Health Service and Indem. Co., 98-3034 (La.10/19/99), 749 So.2d 610, the supreme court discussed the relationships of parties in a group insurance policy. A group insurance policy is a contract between an insurer and a central entity for the benefit of a group of people that has some relationship to the central entity. By its nature, group insurance is a three-party relationship that inserts some central entity between the insurer and the insured. Members of a group insurance plan are generally not supplied with a *313 complete copy of the master policy but are instead given a certificate of insurance that describes the master policy. The relationship between the insurer and the member of the group is contractual in nature. Thus, the group policy issued to the central entity and the certificate of insurance issued to the member of the group, together, constitute the contract of insurance between the parties. See In re Louisiana Health Service and Indem. Co., 98-3034 at 6-7, 749 So.2d at 614.
We believe that the group insurance policy providing blanket family coverage for accidental death claims issued by CNA to Orchard Bank (the central entity) and the certificate of insurance issued to Betty as a credit card customer (member of the group) constitute a blanket group accidental death insurance policy. Orchard Bank offered the accidental death insurance (through a telemarketing plan) for the benefit of the group, e.g., its credit card customers. The members of the group had a relationship to Orchard Bank because they had credit cards issued through Orchard Bank. The group members were provided a certificate of insurance describing the terms of the master group policy. The CNA master policy provided:[5]
PAYMENT OF CLAIM: Benefits for loss of life of the Insured are payable in accordance with the beneficiary designation in effect at the time of payment. If no such designation is in effect at that time, the benefits shall be paid to the surviving person or persons in the first of the following classes of successive preference beneficiaries of which a member survives the Insured:
The Insured's (a) spouse; (b) children including legally adopted children; (c) parents; (d) brothers and sisters; or (e) estate. In determining such person or persons, We may rely upon an affidavit by a member of any of the classes of preference beneficiaries. Payment based upon such affidavit shall be full acquittance hereunder unless, before such payment is made, We have received at Our Home Office written notice of valid claim by some other person. If two or more persons become entitled to benefits as preference beneficiaries, they shall share equally.

* * *
Any payment made by Us in good faith pursuant to this provision shall fully discharge Us to the extent of such payment. (Emphasis added).
We have thoroughly reviewed the language of the master policy and certificate of insurance at issue, and have determined that there is no merit to Frank and the estate's contention that the "payment of claims" provision is in reality a "facility of payment" clause. Frank and the estate argue that insurers are not allowed to choose a beneficiary under a facility of payment clause in a contract of insurance. "Facility of payment" clauses have been discussed in many older cases involving clauses in industrial life insurance policies. The clauses are primarily designed to limit the liability of the insurer, who, in good faith, pays policy proceeds to claimants apparently "equitably entitled" to receive them. The clauses were not meant to give insurers broad, arbitrary or discretionary power to choose or designate beneficiaries. See Metropolitan Life Ins. Co. v. Groue, 117 So.2d 833 (La.App.Orleans 1960).
*314 The "payment of claims" provision in the policy at issue does not constitute a "facility of payment" clause. There is no discretionary, arbitrary, or unchallenged right in the policy for the insurer to name anyone as a beneficiary who seems "equitably entitled" to the benefits. Instead, the provision clearly dictates specific classes of alternate beneficiaries entitled to receive the benefits, in a successive order of preference, when there has been no beneficiary designation by the insured. If there is no beneficiary in the first class, then the insurer looks to the next class of beneficiary. There is no discretion involved.[6] Moreover, the payment of claims provision informs the insured exactly who is entitled to payment of benefits.[7] We need to examine only the insurance contract language to determine to whom the benefits are due. See American Health & Life Ins. Co. v. Binford, 511 So.2d 1250, 1254 (La.App. 2d Cir.1987). The supreme court long ago recognized the contractual obligation of an insurer to pay the surviving alternate beneficiaries dictated in policy language. See Morelock v. Aetna Life Ins. Co., 222 La. 712, 63 So.2d 612, 614 (1953). The policy at issue clearly and unambiguously provided to whom the benefits were due and under what circumstances they were payable.
An insurance policy issued in Louisiana is considered to contain all the provisions required by statute. Simms v. Butler, 97-0416, p. 3 (La.12/2/97), 702 So.2d 686, 688. No insurance contract can include any provision inconsistent with or contradictory to any applicable section of the Louisiana Insurance Code. See Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La.1983). The general statute in Louisiana describing group health and accident insurance policies is found at La. R.S. 22:215. That statute also specifically governs family group and blanket health and accident insurance policies. We have examined the policy language at issue and have closely read the statute, and we agree with the district court that the policy language does not conflict with or violate the statutory scheme. La. R.S. 22:215(A) provides in pertinent part:
Any insurer authorized to write health and accident insurance in this state shall have power to issue policies described in this Section.
(1) Group health and accident insurance is any policy of health and accident insurance covering more than one person, except family group, blanket, and franchise policies hereinafter specifically provided for, which shall conform to the following requirements:

* * *
(3) Blanket health and accident insurance is any policy covering special groups of persons as enumerated in one of the following paragraphs (a) through (f):

* * *
(f) Under a policy issued to any other substantially similar group which, in the discretion of the commissioner of insurance, may be subject to the issuance *315 of a blanket health and accident policy.
(g) An individual application shall not be required from a person covered under such a blanket policy. The insurer shall furnish to the policyholder for delivery to the insured a certificate of insurance which shall disclose the benefits, limitations, exclusions and reductions contained in the policy and the provisions relating to notice of claim, proof of loss, time of payment of claim and any other relevant information, including the name and address of the insurer. All benefits under any such blanket policy shall be payable to the person insured, or to his designated beneficiary or beneficiaries, if the policy permits the designation of named beneficiaries, or to his estate, except that if the person insured be a minor such benefits may be made payable to his parent, guardian, or other person actually supporting him. (Emphasis added).
The statute, La. R.S. 22:215(A)(3)(g), mandates payment of all benefits to the insured's designated beneficiary if the policy permits the designation of named beneficiaries. The statute does not prohibit the designation of classes of beneficiaries by the terms of the policy. In this case, although she could have done so under the terms of the policy, the insured did not personally designate a beneficiary. The certificate of insurance provided to the insured specifically stated that if there was "no such designation" in effect at the time of payment, then "the benefits shall be paid to the surviving person or persons in the first of the following classes of successive preference beneficiaries." Accordingly, there is no absence of a designated beneficiary in this policy. The policy specifically permits the designation of beneficiaries. Because the policy sets forth the designation of the classes of beneficiaries by successive preferences of surviving spouse, children, parents, siblings and then the estate, we never reach the statutory mandate of benefits being payable to the estate found in La. R.S. 22:215(A)(3)(g). The statute does not apply, and it is not in conflict with the policy's designation of classes of "successive preference beneficiaries."
We also note that the statute does not prohibit the listing of classes of successive designated alternate beneficiaries in the policy, nor does the statute require that the beneficiaries be named only by the insured. The statute mandates only that the insurer furnish the insured a certificate of insurance disclosing the benefits, limitations, exclusions and reductions contained in the policy and the provisions relating to the payment of claims. The plain purpose of this statutory requirement is to provide the insured with information regarding coverage, benefits and applicable limitations so that the insured may rely on the provisions in the certificate of insurance. See Leonard, Tutrix of Bland v. Continental Assur. Co., 457 So.2d 751, 754 (La.App. 1st Cir.), writ denied, 460 So.2d 1047 (La.1984); Colvin v. Louisiana Hospital Service, Inc., 321 So.2d 416, 418-419 (La.App. 2d Cir.), writ denied, 323 So.2d 476 (La.1975). We agree with the district court that the policy language is not ambiguous and does not conflict with the statutory provision. Therefore, the contract of insurance must be enforced as written.
Frank argues next that if the policy language prevails, then he is entitled to the benefits because he is Betty's surviving "spouse" and is in the first class of successive preference beneficiaries listed in the policy. Betty and Frank were not legally married at the time that the insurance coverage became effective on May 6, 1999, *316 and they were not legally married on the date of Betty's death, March 7, 2000. Betty and Frank were divorced on November 6, 1987, thus Betty had no surviving spouse. Although Betty could have made a valid and enforceable written designation that Frank was her beneficiary under the policy, she did not do so. Cf. Sizeler v. Sizeler, 170 La. 128, 127 So. 388, 389 (1930); Jackson v. Continental Casualty Company, 412 So.2d 1364, 1365 (La.1982).[8]
The term "spouse" is not defined in the insurance contract, but the word is ordinarily used to mean a partner in a lawful marriage, one's wife or husband. See Harris v. Lumbermen's Mut. Cas. Co. of Chicago, III., 48 So.2d 728, 731 (La.App. 1st Cir.1950); Crigler v. Crigler, 28,085, p. 4 (La.App.2d Cir.4/3/96), 671 So.2d 1199, 1202, writs denied, 96-1092 and 96-1148 (La.6/7/96), 674 So.2d 968. Louisiana law does not recognize common-law marriages. See Succession of Marinoni, 177 La. 592, 148 So. 888, 894 (1933). Marriage in Louisiana is a legal relationship between a man and a woman created by civil contract. See La. Civ.Code arts. 86-88; Liberty Mutual Ins. Co. v. Caesar, 345 So.2d 64, 65 (La.App. 3d Cir.), writ denied, 347 So.2d 1118 (La.1977). The CNA master policy contained a conformity clause providing:
CONFORMITY WITH STATE STATUTES: If any provision of this policy is in conflict with the statutes of the state in which this policy is delivered or issued for delivery, the provision is automatically amended to meet the minimum requirements of the statute. (Emphasis added).
This clause automatically amends the term "spouse" to be in accord with Louisiana law. Betty was not survived by a legal spouse.
The next successive class of beneficiaries designated in the payment of claims provision of the insurance contract is the insured's surviving children. Betty's two adult children, Reva and Lewis, are the only children and therefore, they are the beneficiaries of the insurance proceeds. The district court's determination was legally correct.

CONCURSUS PROCEEDINGS AND COURT COSTS
Frank argues that the district court erred in concluding that this was not a concursus proceeding, as well as a suit for declaratory judgment, and that therefore, it was error to order Frank to pay all court costs. A concursus proceeding is defined in La.Code Civ. P. art. 4651 as one in which two or more persons having competing or conflicting claims to money are impleaded and required to assert their respective claims contradictorily against all other parties. The threshold element for the initiation of a concursus proceeding is met in this case because there were at least two persons having competing claims to the insurance proceeds. Any party having a purported interest in the disputed funds may invoke the concursus, and there is no requirement that the funds be deposited with the court. However, when funds are deposited with the court, the party is relieved of liability to the other parties for *317 the deposited funds. See Austral Oil Co., Inc. v. Milliken & Farwell, Inc., 307 So.2d 377, 379 (La.App. 1st Cir.1974), writ denied, 310 So.2d 642 (La.1975); La.Code Civ. P. art. 4658. Furthermore, La.Code Civ. P. art. 4659 provides that when money is deposited into the registry of the court, the court may award the successful claimant judgment for the costs which have been deducted from the money on deposit, against any other claimant who contested the successful claimant's right to the money, as in the court's judgment may be considered equitable. In all other instances, the court may render judgment for costs as it considers equitable. La.Code Civ. P. art. 4659. At the time of the district court's judgment, the disputed money had not been deposited into the registry of the court. Thus, the district court had discretion to award costs against Frank in the case sub judice. Although in its oral reasons for judgment the district court stated that this was only a suit for declaratory judgment, and not a concursus proceeding, that statement, whether correct or incorrect, did not alter the discretion vested in the district court's allocation of costs against Frank. See La.Code Civ. P. arts. 1920 and 4659. We find no abuse in that discretionary award.

CONCLUSION
The district court judgment awarding defendants/appellees, Reva Kay Hulan Folse and Lewis Hulan the $100,000 death benefit proceeds, plus interest, from the CNA insurance policy is affirmed. All costs of this appeal are to be paid equally by plaintiff/appellant, Francis Paul Clements, Sr., and defendant/appellant, Reva Kay Hulan Folse as executrix of the succession of Betty Parker Clements.
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] Betty also purchased coverage under another blanket group accidental death policy (effective July 1, 1999) from Continental Insurance Company (CNA) through a direct mail offer by her credit card company for a $151,000 death benefit, where Betty designated as beneficiary, "the Estate of Betty Clements." However, that CNA policy and beneficiary designation are not at issue in this case.
[3] The $100,000 policy proceeds and interest were eventually deposited into the registry of the court after the trial, pending this appeal, pursuant to a joint motion and order signed by the district court on May 10, 2001.
[4] Although at trial there was a factual dispute regarding whether an enrollment card with a written beneficiary designation to Betty's estate was applicable to the policy at issue, the district court determined that there was no written designated beneficiary for the policy. No party disputes that factual determination on appeal, and we find the record supports that conclusion.
[5] The language in the master policy is virtually identical to the language contained in the certificate of insurance that was mailed to Betty, except that "the Insured" is used in the master policy instead of "You or Your" found in the certificate of insurance.
[6] We find no merit to Frank's contention that the use of classes of beneficiaries in the policy language such as "spouse" or "children" or "parents" is somehow ambiguous or allows the insurer discretion in payment. The terms merely refer to the person occupying that status (i.e., spouse, children, or parents) upon the death of the insured. See Continental Bank & Trust Co. v. Sovereign Camp, W.O.W., 169 La. 989, 126 So. 502, 504 (1930).
[7] This information is required to be in the certificate of insurance issued to the insured. See La. R.S. 22:215(A)(3)(g).
[8] We find no merit to Frank's contention that the Jackson case supports his argument that a common-law spouse not named as a beneficiary may recover benefits under an insurance policy. The Jackson case involved a situation where the common-law spouse was a named beneficiary in a group life insurance policy. Relevant to the holding was a statutory incontestability clause. The Jackson decision does not support Frank's position. The language he relies on is dicta and is therefore not authority for the recognition of a common-law spouse as a legal spouse. See Crigler v. Crigler, 28,085, p. 6 (La.App.2d Cir.4/3/96), 671 So.2d 1199, 1203, writs denied, 96-1092 and 96-1148 (La.6/7/96), 674 So.2d 968.